PRINGLE v YPSILANTI REGIONAL PSYCHIATRIC HOSPITAL

MORGAN v YPSILANTI REGIONAL PSYCHIATRIC HOSPITAL

Docket Nos. 115003, 116304. Submitted May 2, 1990, at Lansing. Decided September 12, 1990. Leave to appeal applied for.

Vincent G. Pringle, an employee of the Ypsilanti Regional Psychiatric Hospital, was injured as a result of an assault by a patient and received workers' compensation benefits. When the hospital denied his requests for supplemental benefits and to be allowed to contribute to the deferred compensation program and informed him that his employment would be terminated after fifty weeks of disability, he brought an action in the Washtenaw Circuit Court against the hospital, the director of the Department of Mental Health and the Department of Management and Budget seeking declaratory and injunctive relief. The trial court, Edward D. Deake, J., issued a restraining order and thereafter held that Pringle was entitled to supplemental benefits for as long as he continued to receive workers' compensation benefits and that he was to continue to receive his fringe benefits. Defendants appealed.

Relying on the determination in Pringle's action, John Morgan, a similarly situated employee of the hospital, also brought an action in the Washtenaw Circuit Court against the same defendants alleging that he was entitled to supplemental benefits and could not be terminated after fifty weeks of disability. The defendants claimed that Morgan could be terminated after one hundred weeks of disability, that he was not entitled to supplemental benefits and that he had not exhausted his administrative remedies. The trial court, Ross W. Campbell, J., agreed with the opinion in Pringle's case and granted Morgan's request for a restraining order and a declaratory judgment. Defendants appealed.

The Court of Appeals held:

1. Defendants properly determined the respective plaintiffs'

REFERENCES

Am Jur 2d, Civil Service § 49; Workmen's Compensation §§ 115, 179, 329, 368, 370.

See the Index to Annotations under Civil Service; Workers' Compensation.

"weekly net wage" for purposes of determining their entitlement to the supplemental benefits. The trial judges erred in holding that "weekly net wage" as used in the statute regarding the supplemental benefits, MCL 330.1113; MSA 14.800(113), was equivalent to the term "average weekly wage" as defined in MCL 418.371(2); MSA 17.237(371)(2). The Legislature intended to determine an assaulted employee's compensation by his base salary, excluding overtime, and taking into account FICA and tax deductions normally made in determining an employee's net wage.

2. Since Pringle was not entitled to the supplement, he was not entitled to fringe benefits.

3. The Department of Mental Health could fire the plaintiffs after one hundred weeks of disability. Because plaintiffs would no longer be on the department's payroll, they would not be entitled to the supplement.

4. Judicial review is precluded until plaintiffs exhaust their administrative remedies.

Reversed.

1. MENTAL HEALTH — EMPLOYEES — INJURIES — ASSAULT — SUPPLEMENTAL BENEFITS.

The term "weekly net wage" used in the section of the Mental Health Code concerning a supplement to workers' compensation benefits for Department of Mental Health employees injured in an assault by a mental health services recipient is not equivalent to the term "average weekly wage" as defined in the Workers' Disability Compensation Act (MCL 330.1113, 418.371[2]; MSA 14.800[113], 17.237[371][2]).

2. MENTAL HEALTH — EMPLOYEES — INJURIES — ASSAULT — SUPPLEMENTAL BENEFITS.

An employee of the Department of Mental Health who is injured in an assault by a mental health services recipient and who is not entitled to a supplement to workers' compensation benefits under the provision of the Mental Health Code pertaining thereto is not entitled to fringe benefits pursuant to the same provision (MCL 330.1113; MSA 14.800[113]).

3. MENTAL HEALTH — EMPLOYEES — INJURIES — ASSAULT — SUPPLEMENTAL BENEFITS.

That portion of the Mental Health Code providing for the payment of a supplemental benefit to an employee of the Department of Mental Health, who is injured as a result of an assault by a recipient of mental health services, while the injured employee is receiving workers' compensation benefits and is on

the payroll is intended to protect a particular class of employees subject to distinct occupational hazards and is not intended to mean that such an employee is to remain on the department's payroll indefinitely; the spirit and language of the statute are not violated by the department's practice of terminating employees and thereby their entitlement to the supplemental benefit after one hundred weeks of disability even though workers' compensation benefits continue beyond the one hundred-week period (MCL 330.1113; MSA 14.800[113]).

4. CIVIL SERVICE — CIVIL SERVICE COMMISSION — GRIEVANCES — APPEAL — EXHAUSTION OF REMEDIES.

The Civil Service Commission is a constitutional body that is empowered to prescribe the procedures by which a state civil service employee may review his grievance; exhaustion of these remedies is required, and failure to do so precludes judicial review.

*James A. Tanielian,* for plaintiffs.

*Frank J. Kelley,* Attorney General, *Gay Secor Hardy,* Solicitor General, and *George L. McCargar* and *Gary L. Finkbeiner,* Assistant Attorneys General, for defendants.

Before: GILLIS, P.J., and BRENNAN and REILLY, JJ.

PER CURIAM. In these consolidated appeals, defendants appeal as of right from the circuit courts' orders which determined that weekly net wage as used in MCL 330.1113; MSA 14.800(113) was equal to the average weekly wage defined in MCL 418.371(2); MSA 17.237(371)(2) and that they were prohibited from discharging plaintiffs from employment and, thereby, terminating their supplemental benefits pursuant to MCL 330.1113; MSA 14.800(113). We reverse.

Plaintiff Pringle was an employee of the Ypsilanti Regional Psychiatric Hospital and was assaulted in the course of his employment. He made a claim for workers' compensation. In determining

the amount of benefits to be paid, the worker's compensation bureau applied the following formula pursuant to MCL 418.371; MSA 17.237(371):

(1) The weekly loss in wages referred to in this act shall consist of the percentage of the average weekly earnings of the injured employee computed according to this section as fairly represents the proportionate extent of the impairment of the employee's earning capacity in the employments covered by this act in which the employee was working at the time of the personal injury. The weekly loss in wages shall be fixed as of the time of the personal injury, and determined considering the nature and extent of the personal injury. The compensation payable, when added to the employee's wage earning capacity after the personal injury in the same or other employments, shall not exceed the employee's average weekly earnings at the time of the injury.

(2) As used in this act, "average weekly wage" means the weekly wage earned by the employee at the time of the employee's injury in all employment, inclusive of overtime, premium pay, and cost of living adjustment, and exclusive of any fringe or other benefits which continue during the disability. Any fringe or other benefit which does not continue during the disability shall be included for purposes of determining an employee's average weekly wage to the extent that the inclusion of the fringe or other benefit will not result in a weekly benefit amount which is greater than ⅔ of the state average weekly wage at the time of injury. The average weekly wage shall be determined by computing the total wages paid in the highest paid 39 weeks of the 52 weeks immediately preceding the date of injury, and dividing by 39.

The bureau determined Pringle's average weekly wage was $648.73 and, therefore, determined that he was entitled to $383.41 in benefits.

Pringle also applied for supplemental benefits

pursuant to MCL 330.1113; MSA 14.800(113), which provides:

> A person employed by the department who is injured as a result of an assault by a recipient of mental health services shall receive his full wages by the department until workmen's compensation benefits begin and then shall receive in addition to workmen's compensation benefits a supplement from the department which together with the workmen's compensation benefits shall equal but not exceed the weekly net wage of the employee at the time of the injury. This supplement shall only apply while the person is on the department's payroll and is receiving workmen's compensation benefits and shall include any employee who is currently receiving workmen's compensation due to an injury covered by this section. Fringe benefits normally received by an employee shall be in effect during the time the employee receives the supplement provided by this section from the department.

Using the Personnel-Payroll Information System for Michigan Manual of the Department of Management and Budget, as directed by the Civil Service Commission, an employee in Ypsilanti Regional Psychiatric Hospital's personnel department determined Pringle's weekly net wage was $336.81. The formula used multiplied an employee's hourly rate by eighty hours because employees were paid on a biweekly basis. Holiday overtime, regular overtime, step increases and annual increases were not included in determining an employee's gross pay. The employee's gross pay was then entered into a computer program along with the employee's marital status and number of dependents. We note that the employee's marital status and number of dependents could be determined from Form 100, which is filed with the

worker's compensation bureau upon the filing of a workers' compensation claim. Using this information, the amount the employee paid in federal and state income tax as well as FICA could be determined. Whether the employee paid city taxes was also considered. An employee's weekly net wage was then determined by subtracting deductions for federal and state income taxes, FICA and city income tax, if applicable, from his gross wages and dividing by two. Because Pringle's workers' compensation benefits ($383.41) exceeded his net weekly pay ($336.81), Ypsilanti Regional Psychiatric Hospital denied his request for supplemental benefits pursuant to MCL 330.1113; MSA 14.800(113). At the same time, Ypsilanti Regional Psychiatric Hospital denied Pringle's request to contribute to the deferred compensation program because there were no provisions for direct payment.

Pringle sued, claiming that the workers' compensation bureau had determined his "net weekly wage" to be $648.73 and, therefore, defendants were required to pay him a supplement of $265.32 (i.e., $648.73, Pringle's "net weekly wage," minus $383.41, Pringle's workers' compensation) pursuant to MCL 330.1113; MSA 14.800(113). Pringle also claimed that he was entitled to contribute to the deferred compensation program because it was a fringe benefit pursuant to MCL 330.1113; MSA 14.800(113). In addition to monetary damages, Pringle requested a declaratory judgment that the workers' compensation bureau's determination of his average weekly wage be treated as his weekly net wage.

Subsequently, Ypsilanti Regional Psychiatric Hospital sent Pringle a letter informing him that his supplemental pay was limited to fifty weeks and that, if he failed to provide medical documen-

tation that he could return to work shortly, he would be fired. Pringle filed a motion for a restraining order preventing Ypsilanti Regional Psychiatric Hospital from limiting his supplemental pay and from terminating his employment.

The court granted Pringle's request for an ex parte temporary restraining order and issued an order to show cause. Despite defendants' objections at the hearing, the court ordered the temporary restraining order continued.

Defendants filed a motion for summary disposition, claiming that they had properly determined weekly net wage and that that term was not equivalent to the term average weekly wage. Defendants further argued that deferred compensation was not a fringe benefit and, even if it was, Pringle was not entitled to it because he was not entitled to the supplemental benefit pursuant to MCL 330.1113; MSA 14.800(113).

Pringle responded, claiming that weekly net wages should be determined by a formula like the one used to determine average weekly wage. Pringle also argued that the intention of the Legislature was to provide a supplemental benefit. Pringle further claimed that, because he was entitled to the supplemental benefit, he was entitled to participate in the deferred compensation program, which was a fringe benefit.

At an evidentiary hearing, the parties agreed that it was improper to terminate whatever supplemental benefit Pringle might have been entitled to after fifty weeks. See, e.g., *Michigan State Employees Ass'n v Dep't of Corrections,* 172 Mich App 155; 431 NW2d 411 (1988). The parties also agreed to determine if firing Pringle after fifty weeks was appropriate. See *Jesse v Dep't of Mental Health,* 130 Mich App 350; 343 NW2d 548 (1983), lv den 422 Mich 860 (1985), where this Court held that

MCL 330.1113; MSA 14.800(113) was not violated by the Department of Mental Health's practice of terminating employees after one hundred weeks of disability. We note that once an employee is no longer on the department's payroll, he is no longer entitled to the supplemental benefit. MCL 330.1113; MSA 14.800(113). *Jesse, supra.*

At the hearing, Pringle called Philip Helms, who was the president of a local union and secretary of the mental health coordinating committee in 1975. Helms testified that MCL 330.1113; MSA 14.800(113) was drafted after he and five other Department of Mental Health employees were stabbed by a patient. He stated that the purpose of the law "was to see that an employee that was injured and disabled in this kind of situation did not suffer a loss of income." Helms also testified that if an employee was denied the supplemental benefit he was nonetheless entitled to fringe benefits.

The court held that the statute did not specify that weekly net wage must be determined using a forty-hour work week. The court held that the statute was unambiguous and that defendants' rules defining weekly net wage "would violate the constitutional prohibitions against delegation of power and due process." The court then held:

> [T]he power to limit supplemental benefits to an amount less than the average weekly wage finding of the Workers' Compensation Board has not been delegated to the Department of Management and Budget. Nor has the power to arbitrarily terminate employment after 50 or 100 weeks of disability been granted to these agencies by the Legislature. For these reasons, the policy of the respective departments is proscribed.
>
> Plaintiff's [Pringle's] employment was hazardous, and, in recognition of the hazards of this type

of employment, the Legislature created [1976 PA 414, MCL 330.1113; MSA 14.800(113)] to insure that an employee continue to receive his former level of income.

The Court finds that the benefit here is tied as a supplement to Workers' Compensation as a disability benefit and that the benefit should run with Workers' Compensation for as long as the disability continues.

Finally, this Court also rules that Plaintiff [Pringle] is entitled to the continuation of his fringe benefits.

Following the court's decision, plaintiff John Morgan filed his suit, alleging that under that decision he was entitled to supplemental benefits pursuant to MCL 330.1113; MSA 14.800(113) and that his employment could not be terminated after fifty weeks.

Morgan was also injured in an assault by a resident. Morgan's average weekly wage was $477.73, entitling him to $276.54 in workers' compensation benefits. Ypsilanti Regional Psychiatric Hospital's employment personnel determined that Morgan's weekly net wage was $326.99 and that his supplemental benefit was $50.45 (i.e., $326.99, Morgan's weekly net wage, minus $276.54, Morgan's workers' compensation). Morgan claimed that he was entitled to $201.19 (i.e., $477.73, Morgan's average weekly wage, minus $276.54, Morgan's workers' compensation).

Morgan also requested an ex parte restraining order preventing Ypsilanti Regional Psychiatric Hospital from terminating his employment and, thereby, his supplemental benefit. The circuit court denied Morgan's request for an ex parte temporary restraining order, but granted an order to show cause why a preliminary injunction should not be issued.

In response to the order to show cause, defendants claimed that Morgan was not entitled to injunctive relief. Defendants stated that Morgan was to be terminated after one hundred weeks. Defendants claimed that their policy of termination was proper, citing *Jesse, supra.* Defendants noted that *Michigan State Employees Ass'n, supra,* was distinguishable because there the employee's supplemental benefit had been cut off even though the employee had not been terminated. In any event, defendants noted that Morgan had failed to exhaust his administrative remedies regarding his discharge, citing *Samuel v Dep't of Mental Health,* 140 Mich 101; 364 NW2d 294 (1985).

In their trial brief, defendants again claimed that they could properly terminate Morgan and, therefore, his supplemental benefit. MCL 330.1113; MSA 14.800(113). *Jesse, supra.* Defendants also claimed that they had properly interpreted that statute to define weekly net wage and that that term was not synonymous with the term average weekly wage.

Morgan claimed that his weekly net wage should be the average weekly wage because that was the average amount he earned and based his spending on. Morgan further argued that he could not be fired because doing so would deprive him of due process. Relying on *Michigan State Employees Ass'n, supra,* Morgan argued that the supplement should run with workers' compensation for as long as the disability continued. Morgan argued that if the Legislature had intended a time limit on the supplemental benefit it could have put one in the statute.

The court agreed with the court's opinion in Pringle's case and, therefore, granted Morgan's request for a restraining order and declaratory judgment.

If a statute is unambiguous, this Court will avoid further interpretation and will not vary the clear meaning of the statute; however, if the statute is ambiguous, it is this Court's duty to effect the intent of the Legislature. *Niggeling v Dep't of Transportation,* 183 Mich App 770, 775; 455 NW2d 415 (1990). Specific words in a given statute are to be assigned their ordinary meaning, unless a different interpretation is indicated. *Id.*

MCL 330.1113; MSA 14.800(113) uses the term "weekly net wage." The circuit court judges held that this term was equivalent to the term "average weekly wage" as defined in MCL 418.371(2); MSA 17.237(371)(2). We disagree. If the Legislature had intended to use that term, it could have done so, but it did not. MCL 330.1113; MSA 14.800(113) refers to full wages as well as weekly net wage. We believe that this indicates the Legislature's intent to determine an assaulted employee's compensation by his base salary (i.e., excluding overtime). Moreover, we believe that taking FICA and tax deductions normally made in determining an employee's net wage is appropriate given the Legislature's use of the term "weekly net wage." We also believe that this interpretation achieves the legislative purpose of supplementing an assaulted employee's workers' compensation so that he does not suffer financial hardship. In sum, defendants properly determined the respective plaintiffs' weekly net wage.

We now turn to Pringle's claim that he was entitled to participate in the deferred compensation plan because it was a fringe benefit. Even assuming that this was a fringe benefit, we hold that Pringle was not entitled to it. MCL 330.1113; MSA 14.800(113) provides that fringe benefits "shall be in effect during the time the employee receives the supplement provided by this section."

Because Pringle was not entitled to the supplement, he was not entitled to fringe benefits.

We recognize that this result may be harsh, and arguably unfair, because the assaulted employees whose weekly net wage exceeds their weekly workers' compensation benefits will be entitled to fringe benefits whereas those whose weekly net wage is less than their weekly workers' compensation benefits, no matter how minuscule the difference, will not. Nevertheless, this is the result we are constrained to reach under the clear language of the statute.

Finally, we hold that the Department of Mental Health could fire plaintiffs after one hundred weeks. *Jesse, supra.* Because plaintiffs would no longer be on the Department of Mental Health's payroll, they would not be entitled to the supplement. MCL 330.1113; MSA 14.800(113). *Jesse, supra.* We agree with defendants that *Michigan State Employees Ass'n, supra,* is distinguishable because there the plaintiff's supplemental benefits were terminated even though she remained on the department's payroll. In any event, we agree with defendants that judicial review is precluded until plaintiffs exhaust their administrative remedies. *Samuel, supra.*

Reversed.