ALSTON v NORTHVILLE REGIONAL PSYCHIATRIC HOSPITAL

Docket No. 121848. Submitted February 13, 1991, at Detroit. Decided May 7, 1991, at 10:10 A.M. Leave to appeal denied, 439 Mich —.

Sereta I. Alston brought an action in the Wayne Circuit Court against her employer, Northville Regional Psychiatric Hospital, its director, and the Department of Mental Health, seeking a declaration that the "weekly net wage" she received as supplemental compensation under MCL 330.1113; MSA 14.800(113) for suffering an assault by a mental health services recipient was equivalent to the "average weekly wage" she was awarded under MCL 418.371(2); MSA 17.237(371)(2) for workers' compensation. She also sought to enjoin the department from implementing its policy of terminating employment. The court, John H. Gillis, Jr., J., agreed with the plaintiff's contention that the term "weekly net wage" under § 113 was equivalent to the term "average weekly wage" under § 371(2). The court also found that the defendants could not legally pursue their policy of terminating employees after one hundred weeks of medical leave of absence, and enjoined the defendants from terminating the plaintiff's employment. The defendants appealed.

The Court of Appeals held:

1. The trial court erred in equating the "weekly net wage" computed under MCL 330.1113; MSA 14.800(113) with the "average weekly wage" computed under MCL 418.371(2); MSA 17.237(371)(2). The Legislature intended to determine an assaulted employee's compensation by base salary, excluding overtime, and taking into account FICA and tax deductions normally made in determining an employee's net wage.

2. The Department of Mental Health properly could terminate the plaintiff after one hundred weeks of medical leave of absence. Because the plaintiff would no longer be on the department's payroll, she would not be entitled to the supplement.

Reversed.

REFERENCES

Am Jur 2d, Workmen''s Compensation §§ 115, 117, 179, 329, 368, 369.

See the Index to Annotations under Hospitals; Workers' Compensation.

1. MENTAL HEALTH — EMPLOYEES — INJURIES — ASSAULT — SUPPLE-
   MENTAL BENEFITS.

   The term "weekly net wage" used in the section of the Mental
   Health Code concerning a supplement to workers' compensa-
   tion benefits for Department of Mental Health employees in-
   jured in an assault by a mental health services recipient is not
   equivalent to the term "average weekly wage" as defined in the
   Workers' Disability Compensation Act (MCL 330.1113,
   418.371[2]; MSA 14.800[113], 17.237[371][2]).

2. MENTAL HEALTH — EMPLOYEES — INJURIES — ASSAULT — SUPPLE-
   MENTAL BENEFITS.

   An employee of the Department of Mental Health who is injured
   in an assault by a mental health services recipient and who is
   receiving a supplement to workers' compensation benefits un-
   der a provision of the Mental Health Code may be terminated
   in accordance with the department's practice after one hundred
   weeks of medical leave of absence; the employee is not entitled
   to the supplemental benefits after termination (MCL 330.1113;
   MSA 14.800[113]).

*James A. Tanielian,* for the plaintiff.

*Frank J. Kelley,* Attorney General, *Gay Secor Hardy,* Solicitor General, and *Clive D. Gemmill* and *Gary L. Finkbeiner,* Assistant Attorneys General, for the defendants.

Before: MacKENZIE, P.J., and GRIBBS and GRIFFIN, JJ.

PER CURIAM. Defendants appeal as of right from orders awarding plaintiff supplemental disability benefits under MCL 330.1113; MSA 14.800(113) in the amount of $177.35 a week for the period of June 8, 1987, through November 1, 1988, and enjoining defendants from terminating plaintiff's employment. We reverse.

I

Plaintiff was injured by a patient while em-

ployed as an aide at Northville Regional Psychiatric Hospital. Pursuant to the provisions of the Workers' Disability Compensation Act, MCL 418.101 *et seq.*; MSA 17.237(101) *et seq.,* she applied for and received workers' compensation benefits in the amount of $288.74 a week. This rate was based on an "average weekly wage" of $466.09 as computed under § 371(2) of the wdca, MCL 418.371(2); MSA 17.237(371)(2).

As an employee of a state psychiatric hospital, plaintiff was also entitled to supplemental compensation under § 113 of the Mental Health Code, 1976 PA 414, MCL 330.1113; MSA 14.800(113). That section, referred to as Act 414, provides for a supplemental benefit for an injured mental health department employee, so that, when combined with the employee's workers' compensation benefits, the employee receives an amount equal to the employee's "weekly net wage" at the time of the injury.

Plaintiff's complaint for declaratory judgment alleged that, in order for her total disability compensation to equal her "weekly net wage" under Act 414, her supplemental benefit should be in the amount of $177.35 a week. The trial court agreed. In reaching this result, the court equated plaintiff's "weekly net wage" under Act 414 with her "average weekly wage" as computed under § 371(2) of the wdca. Plaintiff's weekly workers' compensation benefits of $288.74 plus the ordered Act 414 supplement of $177.35 thus totalled her "average weekly wage" of $466.09.

On appeal, defendants contend that the trial court erred in equating the "weekly net wage" computed under Act 414 with the "average weekly wage" computed under § 371 of the wdca. We agree. An identical claim was recently addressed by this Court in *Pringle v Ypsilanti Regional*

*Psychiatric Hosp,* 185 Mich App 446; 463 NW2d 144 (1990). There, this Court held:

> MCL 330.1113; MSA 14.800(113) [Act 414] uses the term "weekly net wage." The circuit court judges held that this term was equivalent to the term "average weekly wage" as defined in MCL 418.371(2); MSA 17.237(371)(2). We disagree. If the Legislature had intended to use that term, it could have done so, but it did not. MCL 330.1113; MSA 14.800(113) refers to full wages as well as weekly net wage. We believe that this indicates the Legislature's intent to determine an assaulted employee's compensation by his base salary (i.e., excluding overtime). Moreover, we believe that taking FICA and tax deductions normally made in determining an employee's net wage is appropriate given the Legislature's use of the term "weekly net wage." We also believe that this interpretation achieves the legislative purpose of supplementing an assaulted employee's workers' compensation so that he does not suffer financial hardship. In sum, defendants properly determined the respective plaintiffs' weekly net wage. [185 Mich App 456.]

We find the reasoning of *Pringle* persuasive and adopt it as our own. Accordingly, we hold that "weekly net wage" as computed under Act 414 should not be equated with "average weekly wage" as computed under the WDCA. The trial court erred in holding otherwise.

II

Pursuant to Department of Mental Health policy, plaintiff was advised that her employment would terminate after she took one hundred weeks of medical leave of absence. The trial court agreed with plaintiff that defendants could not legally pursue this policy, and accordingly enjoined defendants from terminating plaintiff's employment upon reaching one hundred weeks' medical leave.

Unlike the trial court, we conclude that plaintiff's termination after one hundred weeks' medical leave of absence, and the consequent termination of supplemental benefits, was proper. The propriety of the department's policy was decided in *Pringle.* This Court stated:

> Finally, we hold that the Department of Mental Health could fire plaintiffs after one hundred weeks. *Jesse* [v *Dep't of Mental Health,* 130 Mich App 350; 343 NW2d 548 (1983)]. Because plaintiffs would no longer be on the Department of Mental Health's payroll, they would not be entitled to the supplement. MCL 330.1113; MSA 14.800(113). *Jesse, supra.* We agree with defendants that *Michigan State Employees Ass'n* [v *Dep't of Corrections,* 172 Mich App 155; 431 NW2d 411 (1988)], is distinguishable because there the plaintiff's supplemental benefits were terminated even though she remained on the department's payroll. In any event, we agree with defendants that judicial review is precluded until plaintiffs exhaust their administrative remedies. *Samuel* [v *Dep't of Mental Health,* 140 Mich App 101; 364 NW2d 294 (1985)]. [185 Mich App 457.]

Again, we rely on *Pringle* and hold that the Department of Mental Health could terminate plaintiff's employment after one hundred weeks of medical leave of absence.

III

Defendants' final claim is unsupported by citation to any meaningful authority or more than cursory briefing. We therefore deem the claim abandoned and decline to address the issue. See *Ward v Frank's Nursery & Crafts, Inc,* 186 Mich App 120, 129; 463 NW2d 442 (1990).

Reversed.