GENEROU v KALAMAZOO REGIONAL PSYCHIATRIC HOSPITAL

Docket No. 125911. Submitted November 6, 1991, at Grand Rapids. Decided December 27, 1991, at 9:15 A.M. Leave to appeal sought.

Karen Generou brought an action in the Kalamazoo Circuit Court against Kalamazoo Regional Psychiatric Hospital and others, alleging that the hospital, her employer, denied her requests for supplemental benefits, fringe benefits, and deferred compensation after she was injured in an assault at work by a recipient of mental health services. She also sought a declaration that the hospital's policy of terminating employees after they have received workers' compensation benefits for one hundred weeks was contrary to law. The court, William G. Schma, J., granted summary disposition for the plaintiff . The court equated the term "weekly net wage" in the supplemental benefits statute, MCL 330.1113; MSA 14.800(113), with the "average weekly wage" computed under the Workers' Disability Compensation Act, MCL 418.371; MSA 17.237(371), and found that the hospital had erred in denying supplemental benefits and that the plaintiff could not be terminated until her workers' compensation benefits expired after five hundred weeks. The defendants appealed.

The Court of Appeals *held:*

Administrative Order No. 1990-6, 436 Mich lxxxiv, requires adherence to the holdings of *Alston v Northville Regional Psychiatric Hosp,* 189 Mich App 257 (1991), that the term "weekly net wage" in MCL 330.1113; MSA 14.800(113) is not equivalent to the term "average weekly wage" in MCL 418.371; MSA 17.237(371) and that a hospital properly can terminate employment after one hundred weeks of workers' compensation benefits have been received. Reversal of the trial court's order and remand for entry of a judgment in favor of the defendants is required.

Reversed and remanded.

*James A. Tanielian,* for the plaintiff.

*Frank J. Kelley,* Attorney General, *Gay Secor*

*Hardy,* Solicitor General, and *Clive D. Gemmill* and *Gary L. Finkbeiner,* Assistant Attorneys General, for the defendants.

Before: JANSEN, P.J., and NEFF and CONNOR, JJ.

NEFF, J. Defendants appeal as of right from an order of the circuit court granting plaintiff's motion for summary disposition. The court also declared that plaintiff's claims for supplemental benefits, fringe benefits, and deferred compensation pursuant to MCL 330.1113; MSA 14.800(113) accurately reflected the law and that plaintiff should receive those benefits for as long as she received workers' compensation benefits. We reverse the decision of the trial court on the authority of *Alston v Northville Regional Psychiatric Hosp,* 189 Mich App 257; 472 NW2d 69 (1991), but only because we are required to do so by Administrative Order No. 1990-6, 436 Mich lxxxiv.

I

Plaintiff was injured during the course of her employment at the Kalamazoo Regional Psychiatric Hospital when she was assaulted by a mental patient. As a result of the injuries and disabilities suffered from that assault, plaintiff applied for and received workers' compensation benefits, pursuant to the Workers' Disability Compensation Act, MCL 418.101 *et seq.*; MSA 17.237(101) *et seq.* Benefits were administered by the Accident Fund of the State of Michigan. It was determined that plaintiff's "average weekly wage," computed under MCL 418.371; MSA 17.237(371), was $681.50 and that plaintiff would receive a weekly "compensation rate" in the amount of $365.62.

Plaintiff then filed a request for supplemental

disability benefits pursuant to MCL 330.1113; MSA 14.800(113), which provides supplemental disability benefits for employees of the Department of Mental Health (DMH) who are injured as a result of assaults by recipients of mental health services. These supplemental benefits are to be added to the workers' compensation benefits so that the payments made to the employee will equal, but not exceed, the "weekly net wage" received by the employee at the time of the injury. The DMH, under Department of Management and Budget (DMB) guidelines, calculated plaintiff's weekly net wage under MCL 330.1113; MSA 14.800(113) to be $347.37, less than what she was receiving in workers' compensation benefits. The hospital denied plaintiff supplemental benefits because, according to the calculations of the DMH she was already being paid more than one hundred percent of her weekly net wage.

Plaintiff also requested fringe benefits and deferred compensation benefits as guaranteed by MCL 330.1113; MSA 14.800(113). The hospital denied these also, claiming that she was not entitled to them pursuant to the terms of the statute.

Plaintiff thereafter filed a complaint against the hospital, the DMH, and the DMB, alleging that she was entitled to one hundred percent of her net weekly wage, which she claimed should be the same as the average weekly wage calculated under the workers' compensation act. She also alleged that the hospital's decision to terminate her employment after one hundred weeks of receiving workers' compensation benefits was contrary to law.

Plaintiff filed a motion for summary disposition, alleging that there was no material issue of fact regarding her claims and that she was entitled to judgment as a matter of law.

In her brief filed with the motion for summary disposition, plaintiff questioned the guidelines set up by the DMB and the DMH, asked the court to interpret "weekly net wage" as used in MCL 330.1113; MSA 14.800(113), and requested the court to determine the constitutionality of the termination of her employment by the DMH and the DMB after a one hundred-week period of disability.

The trial court entered an opinion and order granting plaintiff's motion for summary disposition, finding that the only question before it was the interpretation of MCL 330.1113; MSA 14.800(113). The court determined that the Legislature had intended that an employee to whom the statute applied should receive full wages during the disability period and would not be limited to an amount less than the average weekly wage under the workers' compensation act. The court also determined that the Legislature had intended that a disabled employee's job not be terminated until workers' compensation benefits were expired, which would be after five hundred weeks, not one hundred weeks. The court further ordered that the money owed plaintiff should be paid by a lump sum check and that payment of supplemental benefits was to start immediately.

Defendants appealed to this Court, which granted their motion for immediate consideration and for a stay.

II

MCL 330.1113; MSA 14.800(113) provides:

A person employed by the department [of mental health] who is injured as a result of an assault by a recipient of mental health services shall

receive his full wages by the department until workmen's compensation benefits begin and then shall receive in addition to workmen's compensation benefits a supplement from the department which together with the workmen's compensation benefits shall equal but not exceed the weekly net wage of the employee at the time of the injury. This supplement shall only apply while the person is on the department's payroll and is receiving workmen's compensation benefits and shall include an employee who is currently receiving workmen's compensation due to an injury covered by this section. Fringe benefits normally received by an employee shall be in effect during the time the employee receives the supplement provided by this section from the department.

The term "weekly net wage" is not defined in the Mental Health Code.

If reasonable minds can differ with regard to the meaning of a statute, judicial construction is appropriate. *Dep't of Social Services v Brewer,* 180 Mich App 82, 84; 446 NW2d 593 (1989). The primary goal of judicial interpretation of statutes is to ascertain and give effect to the intent of the Legislature. *People v Hawkins,* 181 Mich App 393, 396; 448 NW2d 858 (1989); *Joy Management Co v Detroit,* 176 Mich App 722, 730; 440 NW2d 654 (1989). The court must look to the object of the statute and the harm it is designed to remedy and apply a reasonable construction that best accomplishes the purpose of the statute. *In re Forfeiture of $5,264,* 432 Mich 242, 248; 439 NW2d 246 (1989). In doing so, the court may consider a variety of factors and apply principles of statutory construction. *Rancour v Detroit Edison Co,* 150 Mich App 276, 285; 388 NW2d 336 (1986). Statutory language should be construed reasonably, keeping in mind the purpose of the act. *Brewer, supra.*

Courts may look to the legislative history of an

act to ascertain the reason for the act and the meaning of its provisions. *People v Hall,* 391 Mich 175, 191; 215 NW2d 166 (1974); *Great Lakes Steel Division, National Steel Corp v Dep't of Labor,* 191 Mich App 323; 477 NW2d 124 (1991).

### III

Defendants first claim that the "weekly net wage" referred to in MCL 330.1113; MSA 14.800(113) is not the equivalent of the "average weekly wage" computed under the Workers' Disability Compensation Act, MCL 418.371; MSA 17.237(371), and urge us to reverse on this basis the trial court's order granting summary disposition to plaintiff. An identical claim was made in *Alston, supra,* and in *Pringle v Ypsilanti Regional Psychiatric Hosp,* 185 Mich App 446, 456; 463 NW2d 144 (1990). The Court in *Alston* found the reasoning of *Pringle* persuasive and adopted it as its own. In doing so, the *Alston* Court held that "weekly net wage" as computed under MCL 330.1113; MSA 14.800(113) should not be equated with "average weekly wage" computed under the Workers' Disability Compensation Act and that an assaulted employee's compensation is determined according to his base salary, i.e., excluding overtime.

We agree with *Alston* and *Pringle* that the terms "average weekly wage" and "net weekly wage" are not synonymous. See also *Schumacher v Macomb-Oakland Regional Center,* 192 Mich App 85; — NW2d — (1991). However, we are convinced that the "average weekly wage" as computed under the workers' compensation act should be used to determine a worker's "weekly net wage" under the statute at issue here and would so hold for two reasons were we not bound by *Alston* pursuant to the administrative order.

First, because the mental health statute refers to workers' compensation benefits and directly ties supplemental benefits to benefits received under the workers' compensation act, the statutes are in pari materia and must be read together. See *Feld v Robert & Charles Beauty Salon,* 174 Mich App 309, 317; 435 NW2d 474 (1989), rev'd on other grounds 435 Mich 352; 459 NW2d 279 (1990), and *Crawford Co v Secretary of State,* 160 Mich App 88, 95; 408 NW2d 112 (1987).

Second, and most important, to effectuate the intent of the Legislature that mental health workers affected by the statute receive their full salary, it is imperative that a worker's true salary, including overtime, be used to compute supplemental benefits. Only by considering overtime pay normally earned can the DMH fully effectuate the intent of the Legislature.

The first criterion in determining legislative intent is the specific language of the statute. *Hawkins, supra.* The statute states that a worker injured as a result of an assault by a mental health services recipient shall receive his "full wages" by the DMH until workers' compensation benefits begin. Once workers' compensation benefits begin, such a worker shall receive a supplement from the DMH that together with workers' compensation benefits shall equal but not exceed the "weekly net wage" of the employee at the time of the injury. In our view, this language evidences an intent by the Legislature to provide affected workers with a supplement to workers' compensation benefits that would put them in the same position as they would have been had they been working. This necessarily requires a finding that overtime pay be included in the calculation of benefits, but we are unable to find so because we are bound by the *Alston* precedent.

We also have examined the legislative history of the statute and find that our interpretation of the statute is consistent with that history. The analysis of House Bill 5847, which eventually became the statute at issue here, stated that the bill was designed to provide a supplement from the DMH to employees who, while on the job, are assaulted by recipients of mental health services. The analysis states in part:

> Every day many employees of the Department of Mental Health are put in difficult positions where they are expected to supervise and care for mentally unstable persons. There have been instances where employees have been attacked by inmates. Injuries suffered as a result of these attacks are not the fault of the employee and are incurred in the line of duty. For this reason some persons believe that provision should be made to provide these employees with full salary when injured by an inmate assault. [House Legislative Analysis, HB 5847, First Analysis, June 9, 1976.]

The analysis also states:

> Employees in state mental institutions work in unique situations where they are expected to supervise and care for mentally unstable persons. There have been occasions where an inmate has attacked an employee without any apparent provocation by the employee. Employees who jeopardize their welfare while in the line of duty deserve to be fully compensated if injured.
>
> The Department of Corrections provides supplemental benefits to workmen's compensation for those employees injured as the result of an assault by an inmate. Department of Mental Health employees are placed in equally dangerous and volatile situations and should also be fully compensated when injured by an inmate. [*Id.*]

After examining the express language of the

statute and its legislative history, we conclude that the reason for the statute is to provide DMH employees with a supplement that would fully compensate them when injured on the job by a mental health services recipient. These same aids to statutory construction also lead us to conclude that the Legislature recognized that an injured worker is not fully compensated by workers' compensation benefits and that overtime pay must be included in determining the supplemental benefit if an injured employee is to be fully compensated. By failing to consider overtime pay in calculating "net weekly wage," defendants will almost always deny an injured employee any supplemental benefits because workers' compensation expressly includes overtime pay in its calculation.

We recognize that a long-standing, consistent administrative interpretation of a statute by those charged with its execution is entitled to considerable weight, *Feld, supra,* p 314; *Manistee v Employment Relations Comm,* 168 Mich App 422, 427; 425 NW2d 168 (1988), and that such an interpretation ought not be overruled without cogent reasons. *Central Advertising Co v Dep't of Transportation,* 162 Mich App 701, 706; 413 NW2d 479 (1987). However, defendants' interpretation of the statute at issue and the interpretations advanced in *Alston* and *Pringle* defeat the purpose of the statute. and allow defendants to avoid paying the very benefits the statute was intended to provide.

IV

Were we not bound by *Alston,* we would find that the trial court properly granted summary disposition in plaintiff's favor. We would find, however, that in applying the statute, the court erred in its award to plaintiff. The court equated "aver-

age weekly wage" under MCL 418.371; MSA 17.237(371) with "weekly net wage." In our view, the court should have computed the "weekly net wage" by subtracting from the "average weekly wage" (which includes overtime pay) taxes, deductions, and workers' compensation payments.

If this case were not controlled by *Alston,* we would affirm the trial court's grant of summary disposition to plaintiff, but would reverse the order granting plaintiff $315.88 in weekly supplemental benefits and would remand this case to the trial court for recomputation of the benefits due plaintiff.

v

Defendants also contend that the trial court erred in determining that termination of plaintiff's employment after one hundred weeks was improper. We disagree, but again are bound by this Court's precedent in *Alston* to reverse the decision of the trial court on this basis as well.

A panel of this Court in *Pringle, supra,* p 457, held that the DMH could fire the plaintiffs in that action after one hundred weeks of disability. The *Pringle* panel relied on *Jesse v Dep't of Mental Health,* 130 Mich App 350, 353; 343 NW2d 548 (1983), in which this Court held that MCL 330.1113; MSA 14.800(113) was not violated in spirit or in language by the practice of terminating an employee after one hundred weeks of disability. The *Alston* panel of this Court relied on *Pringle* to hold that the Department of Mental Health could properly terminate the plaintiff's employment after one hundred weeks of medical leave of absence.

While silence by the Legislature for many years following judicial construction of a statute may

suggest consent to that construction, *Craig v Larson,* 432 Mich 346, 353; 439 NW2d 899 (1989), we disagree with both *Pringle* and *Jesse* and, were we not bound by the precedent established in *Alston,* we would find their construction of the statute erroneous.

The statute provides that the supplement shall apply only while the person is on the payroll of the DMH. In our view, this does not give the DMH a license to arbitrarily terminate a worker's employment after one hundred weeks of disability. To allow the DMH to arbitrarily remove affected workers from its payroll after one hundred weeks of disability would frustrate the intent of the Legislature and would nullify the benefit the Legislature intended to bestow upon them while they are on the payroll and receiving workers' compensation payments. Only because we are bound by *Alston* do we conclude that the trial court erred in finding that termination of plaintiff's employment after one hundred weeks of disability was improper.

We note in passing that, although plaintiff has failed to exhaust her administrative remedies with regard to this issue, judicial review is not precluded here because the law will not require the doing of a futile act. *Adkins v Dep't of Civil Service,* 140 Mich App 202, 213; 362 NW2d 919 (1985).

Exhaustion of administrative remedies in this case would have been futile for two reasons. First, because of the *Jesse* case, plaintiff had little, if any, chance of prevailing even if she had exhausted her administrative remedies. Second, defendants state in their brief on appeal that plaintiff was covered by a collective bargaining agreement between Council 25, AFSCME, AFL-CIO and the State of Michigan that provided a four-step grievance procedure that culminated in final, bind-

ing, and *unappealable* arbitration. Had plaintiff availed herself of her administrative remedies under the collective bargaining agreement, she would have been left without a right to resort to the courts in the likely event that her grievance was denied.

## VI

Defendants' final claim is that the trial court erred in restraining defendants from terminating plaintiff's employment after one hundred weeks of disability. Again, because of the controlling precedent in *Alston,* we are constrained to agree.

The trial court's order granting summary disposition to plaintiff is reversed, and this case is remanded to the trial court for entry of judgment in favor of defendants. We do not retain jurisdiction.