WEST BLOOMFIELD CHARTER TOWNSHIP v KARCHON

Docket No. 148609. Submitted August 3, 1994, at Detroit. Decided
February 21, 1995, at 10:15 A.M.

West Bloomfield Charter Township brought an action in the
Oakland Circuit Court against James A. and Dennis M. Kar-
chon, seeking an injunction against further violations by the
defendants of a township ordinance that required a permit
from the township's Woodlands Review Board for the cutting of
trees in the township's woodlands. While the action was pend-
ing, the township amended the ordinance. The defendants filed
a countercomplaint that challenged the constitutionality of the
original and amended versions of the ordinance. The court,
Gene Schnelz, J., granted summary disposition for the defen-
dants, ruling that the ordinances were unconstitutionally
vague, overbroad, and lacking in definite standards for enforce-
ment. The township appealed.

The Court of Appeals *held:*

1. The defendants did not need to exhaust administrative
remedies before challenging the constitutionality of the ordi-
nances. The exhaustion of remedies requirement does not apply
to a facial challenge to a zoning ordinance, and the pursuit of
administrative remedies would have been futile in this case.

2. The absence of clear definitions of the terms "woodland,"
"woodland stand," "woodland edge," and "woodland representa-
tive tree size" in the ordinances at issue renders the ordinances
vague because it is impossible for a person of common intelli-
gence to determine what constitutes a woodland whose trees
may not be cut without the township's permission.

3. The absence of standards for enforcement in the ordi-
nances give unstructured and unlimited discretion to those
charged with the administration of the ordinances when deter-
mining whether to grant or deny a permit to cut trees.

Affirmed.

REFERENCES

Am Jur 2d, Constitutional Law § 818.

Supreme Court's application of vagueness doctrine to noncriminal
statutes or ordinances. 40 L Ed 2d 823.

Supreme Court's views as to overbreadth of legislation in connec-
tion with First Amendment rights. 45 L Ed 2d 725.

Constitutional Law — Due Process — Statutes — Ordinances — Vagueness.

A statute or ordinance may be challenged for vagueness on three grounds: (1) it does not provide fair notice of the conduct proscribed; (2) it confers on the trier of fact unstructured and unlimited discretion to determine whether an offense has been committed; (3) its coverage is overbroad and impinges on First Amendment freedoms; challenges that do not involve the First Amendment must be examined in the light of the facts of the case at hand.

*Kohl, Secrest, Wardle, Lynch, Clark & Hampton, P.C.* (by *William P. Hampton* and *Gerald A. Fisher*) and *Bendure & Thomas* (by *Mark R. Bendure* and *Victor S. Valenti*), for the plaintiff.

*Bodman, Longley & Dahling* (by *Martha B. Goodloe*) and *Honigman Miller Schwartz & Cohn* (by *Norman Hyman* and *Kevin M. Kohls*), for the defendants.

Amicus Curiae:

*Honigman Miller Schwartz & Cohn* (by *Norman Hyman* and *Kevin M. Kohls*), for Builders Association of Southeastern Michigan.

Before: Taylor, P.J., and Connor and M. J. Callahan,* JJ.

Taylor, P.J. This case arises from plaintiff's enforcement of its woodlands ordinance and defendants' constitutional challenge to that ordinance and its subsequently amended version. The parties recognize that both the original and the amended ordinances are at issue in this case. The trial court granted defendants' motion for summary disposition on the basis that the ordinances were unconstitutionally vague, overbroad, and lacking in defi-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

nite standards. Plaintiff appeals as of right from that order. We affirm.

Concerned about the depletion of the township's forested areas, plaintiff adopted a woodland-protection ordinance to preserve the unique and important physical, aesthetic, recreational, and economic benefits the township's woodlands provide. Although the original ordinance contained no findings of fact, the amended ordinance is expressly predicated on findings of fact that woodlands play a vital role in, among other things, absorbing pollution, generating oxygen, protecting groundwater, preventing erosion, reducing excessive noise, and maintaining natural beauty, recreation, and tree diversity. As stated in the amended ordinance, its purpose is to:

> (1) Provide for the protection of woodlands, including trees and associated forms of vegetation, as natural resources that contain elements of natural beauty, wildlife habitat, and geological, hydrological, ecological and historical characteristics significant to the citizens of the township.
>
> (2) Provide for the protection, preservation, replacement, proper maintenance and use of woodlands in order to minimize disturbance and structural changes to the vegetative community; prevent damage from erosion, siltation, windthrow, disease; limit loss of wildlife habitat and vegetative cover, all of which, in the aggregate, result in the destruction of the woodland character.
>
> (3) Prohibit the unregulated cutting of trees or harvesting of forest products within a woodland; to establish a permit process which will regulate the manner and extent of tree cutting and harvesting of forest products from within these unique and valuable natural resource areas; and to prescribe the review process for the issuance of tree cutting and harvesting permits.
>
> (4) Protect the township's woodlands for their current and future value, not only for residential

areas and homesites, but also as settings for development in all zoning districts; to protect the reproductive and regenerative capabilities of woodland areas; to maintain plant and tree diversity; to protect groundwater recharge areas; to maintain visual screening, windbreak, dust collection and noise barrier characteristics exhibited by woodlands.

(5) Provide for the paramount public concern for these natural resources in the interest of health, safety and general welfare of the residents of the township. [Amended West Bloomfield Charter Township Code § 26-46(b).]

In short, the purpose of the ordinance is to protect the township's woodlands by prohibiting the cutting of trees without first obtaining a permit. Accordingly, the ordinances regulated the cutting of trees or the harvesting of forest products in areas designated by the ordinance as woodlands. Pursuant to the ordinance, before cutting any trees in areas designated as woodlands, property owners are required to apply for and receive a permit from the Woodlands Review Board.

In developing their property, defendants cut a number of trees within the woodland portion of their property without seeking or obtaining a permit. Plaintiff filed suit, asserting that defendants' activity constituted a nuisance and a violation of the ordinance. Plaintiff requested an injunction to prevent defendants from further cutting or harvesting their trees, and from removing any cut or harvested trees or wood products from their property. Plaintiff further sought to compel defendants to replace the trees previously removed. Without prejudice to asserting their rights, defendants stipulated a preliminary injunction restraining further cutting or removal of the trees already cut.

Several months thereafter plaintiff amended its

woodlands ordinance, enhancing the prior ordinance's findings of fact and making explicit the main purpose of the ordinance: the protection and preservation of the township's woodlands through a permit process. Although plaintiff's complaint sought only to enforce the prior woodland ordinance, defendants filed a countercomplaint challenging the constitutionality of the amended ordinance. Defendants' counterclaim specifically alleged (1) that the enactment of the ordinance was not authorized by Michigan law and was outside the scope of plaintiff's authority; (2) that the ordinance constituted an unconstitutional taking of private property without due process and without just compensation; and (3) that the ordinance was vague in that it lacked the standards needed to govern plaintiff's discretion, was subject to different interpretations, failed to give persons subject to its restrictions notice of the prohibited conduct, and failed to advance any legitimate governmental interest. Defendants moved for summary disposition of both plaintiff's complaint and their countercomplaint pursuant to MCR 2.116(C)(10). The trial court granted defendants' motions, holding that the ordinances were unconstitutional on their face because they were "vague, overbroad, lack[ing] definite standards, and incapable of being rationally administered." However, the trial court found insufficient evidence to support defendants' takings claim.

First, we consider whether this matter is ripe for adjudication. Plaintiff argues that defendants' constitutional challenge must fail because defendants did not exhaust their administrative remedies. However, the exhaustion of remedies requirement does not apply to a facial challenge to a zoning ordinance. *Keystone Bituminous Coal Ass'n v Debenedictis,* 480 US 470; 107 S Ct 1232; 94 L Ed

2d 472 (1987); *First Evangelical Lutheran Church v Los Angeles Co,* 482 US 304; 107 S Ct 2378; 96 L Ed 2d 250 (1987); *Hodel v Indiana,* 452 US 314; 101 S Ct 2376; 69 L Ed 2d 40 (1981). There are no administrative remedies to exhaust when the facial validity of an ordinance is challenged. *Universal Am-Can Ltd v Attorney General,* 197 Mich App 34, 38; 494 NW2d 787 (1992). Furthermore, because defendants were being sued by the township for violation of its prior woodlands ordinance, pursuit of administrative remedies would have been futile; therefore, defendants' failure to do so is excusable. *Id.; Generou v Kalamazoo Regional Psychiatric Hosp,* 192 Mich App 295, 305; 480 NW2d 638 (1991).

Having determined that defendants were not required to exhaust administrative remedies in this case, we next address whether the trial court's grant of summary disposition was appropriate. In reviewing a motion for summary disposition granted pursuant to MCR 2.116(C)(10), we must review the record de novo to determine whether defendants would have been entitled to judgment as a matter of law. *Borman v State Farm Fire & Casualty Co,* 198 Mich App 675, 678; 499 NW2d 419 (1993).

A statute or ordinance may be challenged for vagueness on three grounds:

> 1. It does not provide fair notice of the conduct proscribed.
> 2. It confers on the trier of fact unstructured and unlimited discretion to determine whether an offense has been committed.
> 3. Its coverage is overbroad and impinges on First Amendment freedoms.

> \* \* \*

> [V]agueness challenges to statutes which do not

involve First Amendment freedoms must be examined in the light of the facts of the case at hand. [*Town & Country Lanes, Inc v Liquor Control Comm*, 179 Mich App 649, 658; 446 NW2d 335 (1989), quoting *People v Howell*, 396 Mich 16, 20-21; 238 NW2d 148 (1976).]

After reviewing the record in this case, we are convinced that the trial court properly granted summary disposition in favor of defendants. The ordinances at issue in this case are vague and lack definite standards, making rational administration of the ordinances impossible. Further, we conclude that the ordinances are overbroad in that they regulate conduct both within and outside areas designated as woodlands. An ordinance does not provide fair notice of proscribed conduct if it "either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application." *Allison v Southfield*, 172 Mich App 592, 596; 432 NW2d 369 (1988). That is, an ordinance must be sufficiently clear and definite as to give those reading it fair notice of prohibited conduct. *Id.* Applying this rule to the instant case, a person of common intelligence must be able to determine from reading the ordinance whether part or all of his land is covered by the ordinance and, if his land is included in the ordinance, what conduct is prohibited. Of course, this inquiry must, be begun by looking at the terms of the ordinance.

As is apparent, a clear definition of the term "woodland" is imperative to the validity of the ordinances. The definition of the term "woodland" is the foundation for the entire regulatory scheme of the ordinances. A clear understanding of the term "woodland" is critical to the administration and purpose of an ordinance that purports to regulate uses of wooded areas. Unless a person of

common intelligence can understand what a "woodland" is, that person has no way of knowing whether contemplated activities are regulated or proscribed by the ordinances.

In the first ordinance, "woodlands" was defined as:

> *Woodlands* is a term to describe an area on the official woodlands map of West Bloomfield containing a stand of trees five (5) acres or larger in area and having a basal area of at least eighty-five (85) square feet per acre. The edge of the woodland shall be included as part of this definition. [Original West Bloomfield Charter Township Code, § 26-2.]

When amended, the ordinance defined "woodland" as:

> *Woodland* is a term describing an area of trees containing one (1) or more stand of trees which are three (3) contiguous acres or larger and having an average basal area of at least thirty (30) square feet per acre within each stand. A woodland, as defined, shall contain sufficient vegetative cover, both overstory and understory, to sustain indigenous biotic communities. A woodlands map will be maintained by the township to be used as a guide in locating woodland areas which may be subject to the provisions of this chapter. [Amended West Bloomfield Charter Township Code, § 26 2.]

The amended ordinance defines "woodland stand" as:

> *Woodland stand* is a term describing a vegetative community that contains similar characteristics (e.g., species composition and density) in both overstory and understory plant layers, and differs from other adjacent vegetative communities by either quantitative or qualitative characteristics.

The overstory shall contain single-stemmed woody plants attaining a height of at least six (6) feet.

Plaintiff argues that the terms in the ordinance are defined as precisely as the subject matter permits. *Ray v Mason Co Drain Comm'r,* 393 Mich 294, 306-307; 224 NW2d 883 (1975). We disagree. In testing an ordinance for vagueness, a court should give the words of the ordinance their ordinary meaning. *Doe v Attorney General,* 194 Mich App 432, 440; 487 NW2d 484 (1992). When an ordinance or statute employs technical words or terms of art, "it [is] proper to explain them by reference to the art or science to which they [are] appropriate." *Corning Glass Works v Brennan,* 417 US 188, 201; 94 S Ct 2223; 41 L Ed 2d 1 (1974) (citing *Greenleaf v Goodrich,* 101 US 278, 284; 25 L Ed 845 [1880]). Under the definitions of the terms "woodland" and "woodland stand," the entire township could be considered one woodland. The township could reasonably be viewed as "an area of trees containing one or more stand of trees which are three (3) contiguous acres or larger and having an average basal area of at least thirty (30) square feet per acre with each stand." The ordinances are devoid of standards for drawing the boundaries of "woodlands" around two or more "stands." There are no proximity standards to determine whether two stands are included in one woodland or whether they are contained in separate woodlands. This causes problems for the property owner whose property is technically included in the woodland, but whose property does not contain a woodland stand, because that property owner is, or could be, required under the ordinances to obtain a permit before mowing the lawn, trimming shrubs, or clearing underbrush. Also, a property owner whose land includes both a wood-

land stand and other trees outside and apart from the stand is subject to restrictions on cutting trees outside the woodland stand, but within the woodland.

Furthermore, the current ordinance fails to define or otherwise establish criteria that would permit either a lay person or a forester to determine what "qualitative or quantitative characteristics" distinguish the "vegetative communities" that define a "woodland stand." As the March 7, 1990, minutes of the Woodlands Review Board illustrate, the term woodland was subject to very different interpretations. As the township's forester stated, "How can we regulate something that we cannot find in the field?" We agree with the trial court that if "the experts employed by the township cannot determine the terms of the ordinance, then it is unreasonable to expect that ordinary residents can."

The ordinance compounds the vagueness problem by using the term "woodland" to construct yet another category: the "woodland edge." That term is defined as:

> *Woodland edge* is a term describing the boundary line of a woodland to be determined by site evaluation on the advice of the township's registered forester, based on a determination of the zone of intergradation (ecotone) between the woodland and adjacent vegetative communities, where the influence of intrinsic factors (soil types) or extrinsic factors (cultivation) results in a vegetative zone containing characteristics which differ from communities on either side of the ecotone.[1]

Not surprisingly, because the term "woodland" is not clearly defined, the term "woodland edge"

---

[1] The prior ordinance included the definition of "woodland edge" in the definition of "woodland."

suffers from similar infirmities. The ordinances lack standards to determine the boundaries of a woodland; thus, it is impossible to determine where the woodland ends and the woodland edge begins. The vagueness inherent in the definition of "woodland edge" causes problems for the land-owner whose property is designated a woodland edge but is adjacent to a field within the woodland, rather than abutting a woodland stand. That land-owner's property is regulated by the ordinance without any apparent indicia of the fact that the property constitutes a woodland edge.

The current ordinance's definition of "woodland representative tree size" is also unconstitutionally vague. The ordinance defines the term as:

> *Woodland representative tree size* is a term describing the diameter of a tree as measured at a point 4.5 feet above the tree base, for which there are an equal number of tree size classes in the stand having a diameter greater than and less than the selected diameter.

Neither the ordinance nor a dictionary contains a definition of "tree size classes," making it impossible for either a lay person or urban forester to rationally determine the woodland representative tree size for any woodland. Accordingly, we hold that the terms "woodland," "woodland edge," and "woodland representative tree size," as defined in the ordinances, are unconstitutionally vague. The ordinances as written do not give an ordinarily intelligent person a reasonable opportunity to know what is prohibited so that he may act accordingly. *Grayned v Rockford,* 408 US 104, 108-109; 92 S Ct 2294; 33 L Ed 2d 222 (1972). Accordingly, summary disposition in favor of defendants was appropriate.

With regard to defendants' allegation that the

ordinances contain inadequate standards, we conclude that the ordinances, as written, lack standards necessary to govern their enforcement, thus giving unstructured and unlimited discretion to those charged with its administration. *Town & Country, supra,* at 658. This is constitutionally impermissible. As the United States Supreme Court stated in *Grayned, supra:*

> [I]f arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. [*Id.* at 108.]

In order to withstand a challenge to its constitutionality, a zoning ordinance must contain standards to guide those who are charged with its administration. *Osius v St Clair Shores,* 344 Mich 693, 700-701; 75 NW2d 25 (1956).

The township's ordinances lack standards necessary to guide those charged with their administration. First, as explained above, because "woodland" is vague, the Woodlands Review Board, in its discretion, can deem nearly any area within the township a woodland subject to regulation. In connection with any proposed site plan or plat development of property containing woodlands, both woodlands ordinances require that the township's registered forester prepare an inventory and evaluation of the woodlands. See original West Bloomfield Charter Township Code, § 26-46(b)(4) and (5); amended West Bloomfield Charter Township Code, § 26-46(d)(1) and (e)(1). However, both ordinances fail to provide any standards to guide the forester in the preparation of the required inventory and evaluation. Thus, the woodlands ordinances allow the Woodlands Review Board or the township's forester to decide case by case the procedures to be followed and the criteria to be applied in evaluating woodlands.

In connection with any harvesting, both woodlands ordinances require that the "diversity of tree species" be maintained

> within the woodland at generally the same ratio both before and after the harvest unless a special written exception is noted on the permit. Special exceptions may be granted where the vigor, quality, scenic aspects or other positive benefits to the woodland would result. [Original West Bloomfield Charter Township Code, § 26-46(b)(4)(c)(3)(vi); amended West Bloomfield Charter Township Code, § 26-46(d)(1)(c)(3)(vi).]

This "tree diversity requirement" totally fails to establish standards to govern the grant or denial of a request for a "special exception" to the tree diversity requirement. In addition to imposing the tree diversity requirement, each woodland ordinance requires any person who proposes to harvest trees within a woodland to describe the woodland after the proposed harvesting, including a specification of a basal area and tree species mixture. Original West Bloomfield Charter Township Code, § 26-46(b)(4)(c)(3)(iii); amended West Bloomfield Charter Township Code, § 26-46(d)(1)(c)(3)(iii). As amended, the woodland ordinance further provides that

> [a] basal area which provides sufficient canopy cover, reproductive capacity, understory structure, and wildlife habitat shall be maintained within the woodland after harvesting. This basal area will be determined by a basal area factor established by the township forester and the woodland review board. [Amended West Bloomfield Charter Township Code, § 26-46(d)(1)(c)(3)(iii).]

The ordinances contain no rule or provision by which the Woodlands Review Board or the town-

ship's forester is to determine whether canopy cover is sufficient, or the granting of a special exception would improve the "vigor, quality, scenic aspects or other positive benefits to the woodland." Amended West Bloomfield Charter Township Code, § 26-46(d)(1)(c)(vi). In making these determinations, the board may apply one or more of a great variety of qualifications that, to the board or the township's forester, may seem proper, or they may simply grant or refuse the permit "solely on captious grounds." *Osius, supra* at 699. The board may apply one test to one applicant and another test to another applicant. *Id.* Like the court in *Osius,*

> "[w]e see no escape from the conclusion that the ordinance attempts to vest the [Woodlands Review Board] with an arbitrary power in the exercise of which [it] will say to one applicant 'yes,' and to another 'no.'" [*Id.,* quoting *Hoyt Bros Inc v Grand Rapids,* 260 Mich 447, 452; 245 NW 509 (1932).]

There are no standards that guide the township authorities in their determination of which areas of the township constitute a woodland or woodland edge. Further, the ordinances lack the criteria to guide the decision whether to grant a permit, deny a permit, grant an exception, or deny an exception. In short, the ordinances completely lack standards by which the actions of the authorities can be measured. The ordinances grant to the Woodlands Review Board untrammeled authority. Such unstructured, unlimited, and arbitrary discretion to determine whether to grant or deny a permit is constitutionally repugnant. *Town & Country Lanes, supra* at 658-659. Accordingly, on this basis also, the trial court's grant of summary disposition in favor of defendant was proper.

Having resolved the matter on this basis, it is unnecessary for us, as it was for the trial court, to address the takings question presented by defendants.

Affirmed.