PEOPLE v BORCHARD-RUHLAND

Docket No. 112436. Argued April 8, 1999 (Calendar No. 19). Decided
July 1, 1999.

Ann C. Borchard-Ruhland was charged in the 74th Judicial District
Court with driving while intoxicated, causing serious impairment of
a bodily function. At the preliminary examination, she moved to
suppress blood alcohol test results of blood withdrawn in the
emergency room where she had been taken after being involved in
a two-car collision. The sample was drawn by a nurse at the
request of a state trooper and with the defendant's consent,
although she had not been placed under arrest at the time. The
court, John C. Leaming, J., granted the motion to suppress. The
Bay Circuit Court, Kenneth W. Schmidt, J., denied leave to appeal.
The Court of Appeals, D. E. HOLBROOK, JR., P.J., and GRIBBS and
DANHOF, JJ., affirmed, 230 Mich App 166 (1998) (Docket No.
200048), holding that blood alcohol testing is presumptively per-
formed pursuant to the implied consent statute, MCL 257.625c;
MSA 9.2325(3), unless an express disclaimer is made by the police
to both the defendant and the medical personnel administering the
test that the request for testing was not being made pursuant to the
statute. Because no express disclaimer was made, and because the
blood was not obtained in conformity with the statute, suppression
was required. The people appeal.

In an opinion by Justice YOUNG, joined by Chief Justice WEAVER,
and Justices BRICKLEY, TAYLOR, and CORRIGAN, the Supreme Court
held:

Because the clear language of MCL 257.625c; MSA 9.2325(3)
requires arrest, its provisions are not applicable to the defendant,
and the trial court erred in suppressing the chemical test evidence
on statutory grounds. Rather, the validity of defendant's consent
must be evaluated pursuant to search and seizure principles under
US Const, Am IV, and Const 1963, art 1, § 11.

1. The plain language of MCL 257.625c; MSA 9.2325(3), and MCL
257.625a(6)(b); MSA 9.2325(1)(6)(b), evinces a legislative intent
that only those persons who have been arrested fall within the pur-
view of the implied consent statute. The statute plainly requires
arrest as an actuating event before a police officer is obligated to

inform a person of rights under the statute. Because the implied consent statute does not control the admissibility of blood alcohol evidence when a defendant is not under arrest, the trooper was not required to advise the defendant of her rights under the statute.

2. Because the defendant falls outside the purview of the implied consent statute, the admissibility of the blood alcohol evidence is governed by the conventional constitutional standards against unlawful searches and seizures found in the Fourth Amendment of the United States Constitution and Const 1963, art 1, § 11. While searches and seizures conducted without a warrant are unreasonable per se, warrant and probable cause requirements do not apply where a search is conducted pursuant to consent. Whether consent is freely and voluntarily given is a question of fact based on an assessment of the totality of the circumstances. Although an intoxicated motorist may not know of the right to refuse chemical testing without penalty, knowledge of the right to refuse consent is not a prerequisite to effective consent. Rather, knowledge of the right to refuse is but one factor to consider in determining whether consent was voluntary under the totality of the circumstances. And the people need not prove that the person giving consent knew of the right.

Reversed and remanded.

Justice KELLY, joined by Justice CAVANAGH, dissenting, stated that the implied consent statute does not require an arrest to trigger entitlement to its protections. Because the defendant's blood alcohol test results were obtained under color of statutory authority, but in violation of the implied consent statute, they were inadmissible.

Michigan courts consistently have held that test results obtained pursuant to the exercise of statutory authority are not admissible unless obtained in conformity with the requirements of the implied consent statute. The Legislature has failed to object to this construction for over two decades. Through several amendments of the implied consent statute, it has left the language in question essentially unchanged.

*Jennifer M. Granholm*, Attorney General, *Thomas L. Casey*, Solicitor General, *Joseph K. Sheeran*, Prosecuting Attorney, and *Timothy J. Kelly*, Chief Assistant Prosecuting Attorney, for the people.

*Smith, Bovill, Fisher, Meyer & Borchard, P.C.* (by *James F. Troester* and *James T. Borchard*), for defendant-appellee.

Amicus Curiae:

*Elwood Brown*, President, *John D. O'Hair*, Prosecuting Attorney, and *Timothy A. Baughman*, Chief, Research, Training and Appeals, for Prosecuting Attorneys Association of Michigan.

YOUNG, J. We granted leave in this case to determine whether defendant's blood alcohol test results were properly suppressed where the police did not attempt to comply with the requirements of the implied consent statute, MCL 257.625c; MSA 9.2325(3). Because the clear language of the implied consent statute requires an arrest as a triggering event, we hold that its provisions do not apply to defendant. Rather, the validity of defendant's consent to chemical testing is evaluated under the standards of US Const, Am IV, and Const 1963, art 1, § 11. The decision of the Court of Appeals is reversed, and the case remanded to the district court for further proceedings.

I. FACTUAL BACKGROUND AND PROCEEDINGS

On October 10, 1995, defendant was involved in a two-car collision. Michigan State Police Trooper William Tyrrell was sent to the scene to investigate. Tyrrell spoke to defendant for approximately five to ten minutes. The trooper testified that defendant had facial injuries and "seemed really lightheaded, pale" and "not really completely coherent." In response to the trooper's inquiries, defendant indicated that she had been drinking. Because Trooper Tyrrell was con-

cerned about possible head injuries, he did not request that defendant submit to a Breathalyzer test at the scene. While Tyrrell continued his investigation of the accident scene, defendant and the two passengers in the other vehicle were transported to the hospital.[1]

After Tyrrell completed his investigation, he went to the hospital. The hospital staff allowed Tyrrell to speak to defendant. Tyrrell testified that defendant was lying down when he approached her and described her demeanor as "very polite and courteous." In response to his request for a blood sample, defendant replied "Sure. Fine. No problem." Tyrrell testified that he did not inform defendant of her chemical test rights under the implied consent statute because she was not under arrest at the time the blood sample was taken.[2]

Pursuant to Trooper Tyrrell's request, an emergency room nurse withdrew defendant's blood and placed it in a Michigan State Police evidence collection kit provided by Tyrrell. The nurse testified that defendant smelled of alcohol and admitted that she had been drinking. The nurse also testified that defendant was cooperative and consented to the blood test. After being treated for her injuries, defendant was discharged from the emergency room and went home.

---

[1] The two passengers in the other vehicle suffered serious injuries. The twenty-year-old driver suffered five broken ribs, a crushed arm, a fractured femur, and two fractured knees. The ten-year-old passenger suffered a fractured leg and facial scarring.

[2] The Michigan State Police have apparently created a card to assist officers to comply with the disclosure requirements of the implied consent statute. The first line of Tyrrell's chemical test rights card stated "I'm a police officer, and you're under arrest."

The blood sample was mailed to the Michigan State Police Laboratory. The blood sample, drawn approximately two and one-half hours after the accident, revealed a blood alcohol level of 0.14 percent. Defendant was arrested on October 19, 1995, and charged with two counts of OUIL causing serious impairment of a bodily function, MCL 257.625(5); MSA 9.2325(5).

At the preliminary examination, defendant moved to suppress the blood alcohol test results. Defendant claimed suppression was required because she had not been "advised of her chemical rights as required by MCL 257.625a(6)(b) [MSA 9.2325(1)(6)(b)] . . . ." Defendant also argued that the results should be suppressed because she was not under arrest at the time she consented, and a "prior valid arrest is mandatory" before a motorist may "legally consent to blood alcohol testing . . . ." Defendant did not argue that her consent was involuntary under the constitutional standard. The district court granted the motion to suppress under the statute. The circuit court denied the plaintiff's application for leave to appeal.

The Court of Appeals affirmed the suppression of the blood alcohol evidence. 230 Mich App 166; 583 NW2d 247 (1998). Citing *McNitt v Citco Drilling Co*, 397 Mich 384; 245 NW2d 18 (1976), and *People v Weaver*, 74 Mich App 53; 253 NW2d 359 (1977), the Court held that blood alcohol testing is presumptively performed pursuant to the implied consent statute in the absence of an express disclaimer by the police made to both the defendant and the medical personnel administering the test that the request for testing was not pursuant to the statute. Because no express disclaimer was given in this case, and because the

blood was not obtained in conformity with the statute, the Court held that suppression was required. We granted leave to appeal. 459 Mich 928 (1998).

## II. ANALYSIS

The implied consent statute, MCL 257.625c; MSA 9.2325(3), provides that

[a] person who operates a vehicle upon a public highway . . . within this state is considered to have given consent to chemical tests of his or her blood, breath, or urine for the purpose of determining the amount of alcohol or presence of a controlled substance or both in his or her blood or urine or the amount of alcohol in his or her breath in all of the following circumstances:

(a) If the person is arrested for a violation of section 625(1), (3), (4), (5), or (6), section 625a(5), or section 625m
. . . .

(b) If the person is arrested for felonious driving, negligent homicide, manslaughter, or murder resulting from the operation of a motor vehicle, and the peace officer had reasonable grounds to believe the person was operating the vehicle while impaired by or under the influence of intoxicating liquor or a controlled substance or a combination of intoxicating liquor and a controlled substance, or while having an alcohol content of 0.10 grams or more per 100 milliliters of blood, per 210 liters of breath, or per 67 milliliters of urine, or if the person is less than 21 years of age while having any bodily alcohol content.

\*        \*        \*

(3) The tests shall be administered as provided in section 625a(6).

When a chemical test is "administered as provided in section 625a(6)," the person subject to chemical testing is advised of certain rights and benefits as found in MCL 257.625a(6); MSA 9.2325(1)(6), which pro-

vides:

(b) A person arrested for a crime described in section 625c(1) shall be advised of all of the following:

(i) If he or she takes a chemical test of his or her blood, urine, or breath administered at the request of a peace officer, he or she has the right to demand that a person of his or her own choosing administer 1 of the chemical tests.

(ii) The results of the test are admissible in a judicial proceeding as provided under this act and will be considered with other competent evidence in determining the defendant's innocence or guilt.

(iii) He or she is responsible for obtaining a chemical analysis of a test sample obtained pursuant to his or her own request.

(iv) If he or she refuses the request of a peace officer to take a test described in subparagraph (i), a test shall not be given without a court order, but the peace officer may seek to obtain such a court order.

(v) Refusing a peace officer's request to take a test described in subparagraph (i) will result in the suspension of his or her operator's or chauffeur's license and vehicle group designation or operating privilege and in the addition of 6 points to his or her driver record.

The rules of statutory construction are well established. The fundamental task of statutory construction is to discover and give effect to the intent of the Legislature. The task of discerning our Legislature's intent begins by examining the language of the statute itself. *Tryc v Michigan Veterans' Facility*, 451 Mich 129, 135; 545 NW2d 642 (1996). Where the language of the statute is unambiguous, the plain meaning reflects the Legislature's intent and this Court applies the statute as written. Judicial construction under such circumstances is not permitted. *Id.* Only where the statutory language is ambiguous may a court properly go beyond the words of the statute to deter-

mine legislative intent. *Luttrell v Dep't of Corrections*, 421 Mich 93; 365 NW2d 74 (1984). When construing a statute, the court must presume that every word has some meaning and should avoid any construction that would render any part of the statute surplusage or nugatory. *Altman v Meridian Twp*, 439 Mich 623, 635; 487 NW2d 155 (1992). If possible, effect should be given to each provision. *Gebhardt v O'Rourke*, 444 Mich 535, 542; 510 NW2d 900 (1994).

Following these principles of statutory construction, we conclude that the plain language of MCL 257.625c; MSA 9.2325(3), and MCL 257.625a(6)(b); MSA 9.2325(1)(6)(b), evinces a legislative intent that only those persons who have been arrested fall within the purview of the implied consent statute. The statute plainly requires arrest as an actuating event before a police officer is obligated to inform a person of his or her rights under the statute. Because the implied consent statute does not control the admissibility of blood alcohol evidence when a defendant is not under arrest,[3] Trooper Tyrrell did not err in failing to advise defendant of her rights under the statute.

Notwithstanding the plain language of the statute to the contrary, and in furtherance of the claim that the implied consent statute is applicable even when a defendant is not under arrest, defendant cites *McNitt, supra,* for the proposition that *all* chemical testing is

---

[3] Our construction is consistent with the holdings of other jurisdictions applying similar statutes. See *State v Smith*, 84 Wash App 813; 929 P2d 1191 (1997); *State v Vandergrift*, 535 NW2d 428 (SD, 1995); *State v Cribb*, 310 SC 518; 426 SE2d 306 (1992); *State v Waring*, 779 SW2d 736 (Mo, 1989); *State v Zielke*, 137 Wis 2d 39; 403 NW2d 427 (1987); *State v Pitchford*, 10 Kan App 2d 293; 697 P2d 896 (1985); *Nelson v State*, 650 P2d 426 (Alas App, 1982); *State v Baker*, 184 Neb 724; 171 NW2d 798 (1969).

done pursuant to the statute *unless* the police expressly disclaim reliance on the statute.[4]

### A. THE *McNITT* DICTA:
### THE "LEGAL PRESUMPTION AND DISCLOSURE RULE"

In *McNitt*, plaintiff, decedent's personal representative, brought a wrongful death action against the owner of the other vehicle involved in an accident. In defense, the defendant sought to admit evidence showing that the decedent was intoxicated. Decedent was unconscious at the time his blood was drawn, and no consent was or apparently could have been given. In the companion case, *Gilbert v Leach*, plaintiff similarly brought a wrongful death action against the defendant involved in that automobile accident. Plaintiff sought to admit evidence that the defendant was intoxicated. After an evidentiary hearing, the trial court held that the defendant did not consent to

---

[4] While conceding that the implied consent statute "provide[s] for the arrest of the driver," *post* at 299, the dissent nonetheless maintains that arrest is not required. The entire analytical premise for this conclusion is that an arrest requirement would contradict "two decades of established precedent and supporting legislative acquiescence." *Id.* at 295.

The "established precedent" alluded to by the dissent consists of the *McNitt* dicta as well as two cases emanating from the Court of Appeals in reliance on that dicta. It is a well-settled rule that obiter dicta lacks the force of an adjudication and is not binding under the principle of stare decisis. See *Roberts v Auto-Owners Ins Co*, 422 Mich 594, 596; 374 NW2d 905 (1985). Further, the dissent cites nothing for the remarkable proposition that this Court is compelled to follow a decision of our intermediate appellate court.

In giving effect to the phrase "if arrested," the dissent maintains that we ignore the "fundamental rule" of legislative acquiescence. As we noted in *Donajkowski v Alpena Power Co*, 460 Mich 243, 261; 596 NW2d 574 (1999), legislative acquiescence "is a highly disfavored doctrine of statutory construction; sound principles of statutory construction require that Michigan courts determine the Legislature's intent from its *words*, not from its silence." We are unpersuaded by the dissent's effort to disregard the unambiguous proviso of the statute.

chemical testing. In both cases, the trial court precluded admission of the blood alcohol evidence.

### 1. THE *McNITT* HOLDING

The *McNitt* Court framed the issue as follows:

> The common issue in these appeals concerns the admissibility of the result of a blood alcohol test in civil litigation, specifically actions for wrongful death commenced by the administrator of the estate of the allegedly drunken driver in *McNitt* and against the allegedly drunken driver in *Gilbert.*
>
> We hold the results of tests administered pursuant to the statute cannot be used in civil litigation. [*Id.* at 388.]

At the time *McNitt* was decided, MCL 257.625a(1); MSA 9.2325(1)(1), limited the admissibility of blood alcohol evidence to "any criminal prosecution for driving a vehicle while under the influence of intoxicating liquor . . . ."[5] Thus, the statute did not permit the admission of blood alcohol evidence in civil actions.[6]

### 2. THE *McNITT* DICTA

The language of the statute prohibiting the admission of chemical test results in civil actions was and should have been dispositive of the issue as framed

---

[5] The statute has since been amended to allow the admission of chemical test results in "any civil or criminal proceeding." MCL 257.625a(6)(a); MSA 9.2325(1)(6)(a).

[6] The statute also provided that "no test shall be given" to a person who refuses to consent. Because no consent had been given, the *McNitt* Court held that the chemical test results were inadmissible. The statute was later amended by 1980 PA 515, stating that "a test shall not be given without a court order" if chemical testing pursuant to the implied consent statute is refused. MCL 257.625d; MSA 9.2325(4).

by the *McNitt* Court. However, for reasons that are unclear, the *McNitt* Court chose to address additional arguments in dicta. It is this dicta that has given rise to the erroneous construction of the statute on which the Court of Appeals relied.

The proponent of the evidence in *McNitt* asserted that "statutory authority is not needed to authorize the administration of blood alcohol tests or to make test results admissible in evidence . . . ." *Id.* at 390. The Court rejected this argument, holding that the proponent's argument ignored "the fact that but for the statute the tests probably would not have been administered by the hospital personnel." *Id.*

A footnote in *McNitt* discussed the grant of civil and criminal immunity afforded medical personnel pursuant to the implied consent statute. The statutory language at the time provided:

> "[A]t the request of a police officer, [a qualified person] can withdraw blood for the purpose of determining the alcoholic content therein under the provisions of this act. No liability for a crime or civil damages predicated on the act of withdrawing blood and related procedures attaches to a qualified person who withdraws blood or assists in the withdrawal in accordance with this act unless the withdrawal is performed in a negligent manner." [*Id.* at 391, n 9.][7]

---

[7] The present statutory language is substantively similar, providing that "[l]iability for a crime or civil damages predicated on the act of withdrawing or analyzing blood and related procedures does not attach to a licensed physician or individual operating under the delegation of a licensed physician who withdraws or analyzes blood or assists in the withdrawal or analysis in accordance with this act unless the withdrawal or analysis is performed in a negligent manner." MCL 257.625a(6)(c); MSA 9.2325(1)(6)(c).

After quoting the statutory language, the *McNitt* Court added:

> The exculpation from liability is we think triggered by "the request of a police officer." Absent disclaimer by the officer that he is acting under the statute, hospital personnel are protected in relying on such a request as authorization to proceed to administer a test under the statute without independent investigation and determination whether statutory requirements have been observed. [*Id.*]

In sum, it appears that, in dicta, *McNitt* created a legal presumption that the requirements of the implied consent statute apply to *any* chemical testing. This *McNitt* dicta can also be read to require that an officer seeking a blood alcohol test expressly disclaim reliance on the statute in order to overcome the presumption. Neither of these conditions originate from the plain text of the statute as it existed then or now. Nevertheless, the Court of Appeals relied on this dubious presumption. To the degree that this *McNitt* dicta created a legal presumption with corresponding disclaimer obligations, it is erroneous and of no persuasive force.

### B. THE EXTENSION OF THE *McNITT* "PRESUMPTION"

In *People v Weaver, supra,* the Court of Appeals extended the erroneous *McNitt* presumption to the suspected intoxicated driver who *did* consent to chemical testing. Defendant Weaver was not formally arrested at the time a blood sample was requested, but he had received *Miranda* warnings.[8] Although the defendant was not under arrest, the police attempted

---

[8] *Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

to comply with the implied consent statute. Before signing a written consent to the procedure, defendant was given an incomplete statement of chemical test rights under the statute. He was found guilty of negligent homicide. On appeal, defendant claimed that the test was administered under the implied consent statute and was not admissible in a negligent homicide prosecution. Relying on the analysis in *McNitt*, the Court of Appeals panel stated:

> As the Supreme Court in *McNitt* held that a blood alcohol test is obtained pursuant to the statutory authority absent express disclaimer to the hospital personnel asked to administer that test, so do we hold that consent to a blood alcohol test obtained from a conscious driver will be considered to have been obtained under color of the statutory authority absent express disclaimer to the driver of reliance on the statute and upon statutory penalties, and advice that the statutory limits on the use to which such test results may be put is inapplicable. [*Id.* at 63.]

The *Weaver* Court stated that the presumption was justified because the "coercive effect" of the implied consent statute required a defendant to choose "between submitting to a test and facing revocation of one's driver's license." *Id.* at 62. The Court further stated:

> The possibility of the statute exerting such a coercive effect, and thereby aiding in the obtaining of the test results, is great enough to require that a request for a blood alcohol test made pursuant to authority other than the statute must expressly disclaim reliance on the statute and the statutory penalties for refusal. [*Id.* at 63.]

As explained above, any judicially created legal presumption found in *McNitt* is contrary to the plain language of the statute. The extension of this dubious

legal presumption to a suspected intoxicated driver who is not under arrest and who consents to chemical testing is also erroneous.

Only those who are arrested and fall within the scope of the statute are subject to the statutory penalties for refusing a request for testing. Motorists who have not been arrested are not subject to the statute. They are not faced with the same predicament as those who are arrested, and may refuse chemical testing without being subject to license revocation and other statutory penalties. As explained below, a motorist's knowledge of the right to refuse to consent to chemical testing when requested other than under the statute is but one factor to be considered in determining whether the consent was voluntary under the applicable constitutional standards. Accordingly, the judicially created presumption created in *Weaver* is expressly overruled.

### C. THE *GALLAGHER* LIMITATION ON POLICE AUTHORITY TO REQUEST CONSENT

As an alternative basis of affirmance, defendant argues that suppression is required because she was not under arrest at the time she consented to chemical testing. Defendant argues that a "prior valid arrest is mandatory" before a motorist may "legally consent to blood alcohol testing . . . ."

In *Gallagher v Secretary of State (On Rehearing)*, 59 Mich App 269; 229 NW2d 410 (1975), the defendant was arrested, but refused to take a Breathalyzer test. The Secretary of State initiated the statutorily prescribed procedure to revoke Gallagher's driver's license for refusing to take a Breathalyzer test. Gallagher's arrest was later held invalid because the drunk driving was not committed in the presence of

the arresting officer. The trial court issued a permanent injunction against the appellant, enjoining it from interfering with Gallagher's driving privileges.

In upholding the injunction, the Court of Appeals held that a valid arrest is an "absolute condition precedent" to a police officer's right to "request a person to submit to chemical tests of his blood, breath or urine or other bodily substances . . . ." *Id.* at 275. Because the arrest was invalid, the request to submit to the test was also invalid and the implied consent statute could not be utilized to revoke the defendant's driver's license.

*Gallagher* correctly observed that "the sine qua non to energize the statutory mandate of the 'implied consent' law is a prior valid arrest." *Id.* at 276. Just as a defendant is not entitled to the benefits of the statute in the absence of arrest, neither is the defendant subject to the statutory penalties for noncompliance.

However, the *Gallagher* Court, while acknowledging that the statute did not apply, erroneously limited a police officer's authority to request chemical testing when the motorist was not arrested and did not come within the scope of the statute.[9] Nothing in the statutory language limits or abrogates the authority of the police to request voluntary chemical testing.[10] A

---

[9] Because the issue is not squarely before us, we need not decide whether the implied consent statute limits the authority of the police to request voluntary chemical testing where the suspect *is* arrested and *does* fall within the ambit of the statute.

[10] In fact, the statute contemplates chemical testing before an arrest. The statute permits a police officer to *require*, not simply request, a suspect to submit to a preliminary Breathalyzer test on the basis of reasonable cause. Arrest of the suspect may be based on the preliminary Breathalyzer results. MCL 257.625a(2); MSA 9.2325(1)(2). The statute also permits arrest without a warrant where the officer has reasonable cause to believe that a driver was operating a vehicle while, among other things, having a blood alcohol content of 0.10 grams or more per 100 milliliters of

police officer's request is merely that—a request—
which can be granted or denied. Indeed, the police
need not have a reasonable suspicion to request to
search. *United States v White*, 81 F3d 775 (CA 8,
1996). Because nothing in the relevant statutory pro-
visions purports to limit the authority of the police to
request voluntary chemical testing where the suspect
is not under arrest, we expressly overrule the con-
trary holding in *Gallagher*.

### D. CONSTITUTIONAL STANDARDS

Having determined that defendant falls outside the
purview of the implied consent statute, we hold that
the admissibility of the blood alcohol evidence is gov-
erned by the conventional constitutional standards
against unlawful searches and seizures found in the
Fourth Amendment of the United States Constitution
and Const 1963, art 1, § 11. The taking of blood to
determine alcohol content constitutes a search and
seizure under the Fourth Amendment. *Schmerber v
California*, 384 US 757, 767; 86 S Ct 1826; 16 L Ed 2d
908 (1966). A defendant has a federal constitutional
right to refuse to consent to a search, the assertion of
which right cannot be a crime or evidence of a crime.
*People v Stephens*, 133 Mich App 294; 349 NW2d 162
(1984); *Camara v Municipal Court of the City & Co
of San Francisco*, 387 US 523, 532-533; 87 S Ct 1727;
18 L Ed 2d 930 (1967).

US Const, Am IV, and Const 1963, art 1, § 11 guar-
antee the right of the people to be free from unrea-
sonable searches and seizures. Searches and seizures
conducted without a warrant are unreasonable per se,

---

blood. MCL 257.625a(1); MSA 9.2325(1)(1); MCL 257.625(1)(b); MSA
9.2325(1)(b).

subject to several specifically established and well-delineated exceptions. *Schneckloth v Bustamonte*, 412 US 218; 93 S Ct 2041; 36 L Ed 2d 854 (1973); *People v Champion*, 452 Mich 92; 549 NW2d 849 (1996).

One established exception to the general warrant and probable cause requirements is a search conducted pursuant to consent. *Schneckloth, supra* at 219. Whether consent to search is freely and voluntarily given is a question of fact based on an assessment of the totality of the circumstances. *Id.* at 227; *People v Reed*, 393 Mich 342; 224 NW2d 867 (1975). The presence of coercion or duress normally militates against a finding of voluntariness. *Id.*

While an intoxicated motorist may not know of the right to refuse chemical testing without penalty, knowledge of the right to refuse consent is not a prerequisite to effective consent. Rather, knowledge of the right to refuse is but one factor to consider in determining whether consent was voluntary under the totality of the circumstances. *Schneckloth, supra* at 227; *People v Lumpkin*, 394 Mich 456, 458; 231 NW2d 637 (1975). However, we note that the people need not prove that the person giving consent knew of the right to withhold consent. *Schneckloth* at 248-249.

Because the defendant did not challenge the constitutional validity of her consent, the district court did not consider the issue. Rather, the district court suppressed the blood alcohol evidence under the statute. On remand, defendant is free to raise this issue for the district court's consideration.

### III. CONCLUSION

Because the clear language of MCL 257.625c; MSA 9.2325(3) requires arrest, its provisions are not appli-

cable to defendant. Therefore, the trial court erred in suppressing the chemical test evidence on statutory grounds. Rather, the validity of defendant's consent must be evaluated pursuant to search and seizure principles under US Const, Am IV, and Const 1963, art 1, § 11. The judgment of the Court of Appeals is reversed and the case remanded for further proceedings.

WEAVER, C.J., and BRICKLEY, TAYLOR, and CORRIGAN, JJ., concurred with YOUNG, J.

KELLY, J. (*dissenting*). I disagree with the majority that the implied consent statute requires an arrest to trigger entitlement to its protections. See MCL 257.625a(6); MSA 9.2325(1)(6), MCL 257.625c; MSA 9.2325(3). I note that the majority opinion contradicts over two decades of established precedent and supporting legislative acquiescence.

I would affirm the Court of Appeals decision that defendant's blood alcohol test results were obtained under color of statutory authority, but in violation of the implied consent statute. Therefore, the test results were inadmissible.

### THE IMPLIED CONSENT STATUTE

Under the implied consent statute:

> (1) A person who operates a vehicle upon a public highway or other place open to the general public . . . within this state is considered to have given consent to chemical tests of his or her blood, breath, or urine for the purpose of determining the amount of alcohol or presence of a controlled substance or both in his or her blood or urine or the amount of alcohol in his or her breath in all of the following circumstances:

(a) If the person is arrested for a violation of section 625(1), (3), (4), (5), or (6), section 625a(5) . . . .

(b) If the person is arrested for felonious driving, negligent homicide, manslaughter, or murder resulting from the operation of a motor vehicle, and the peace officer had reasonable grounds to believe the person was operating the vehicle while impaired by or under the influence of intoxicating liquor or a controlled substance or a combination of intoxicating liquor and a controlled substance, or while having an alcohol content of 0.10 grams or more per 100 milliliters of blood, per 210 liters of breath, or per 67 milliliters of urine . . . .

* * *

(3) The tests shall be administered as provided in section 625a(6). [MCL 257.625c; MSA 9.2325(3).]

When chemical tests are administered under § 625a(6), the statute requires that

(b) A person arrested for a crime described in section 625c(1) shall be advised of all of the following:

(i) If he or she takes a chemical test of his or her blood, urine, or breath administered at the request of a peace officer, he or she has the right to demand that a person of his or her own choosing administer 1 of the chemical tests.

(ii) The results of the test are admissible in a judicial proceeding as provided under this act and will be considered with other competent evidence in determining the defendant's innocence or guilt.

(iii) He or she is responsible for obtaining a chemical analysis of a test sample obtained pursuant to his or her own request.

(iv) If he or she refuses the request of a peace officer to take a test described in subparagraph (i), a test shall not be given without a court order, but the peace officer may seek to obtain such a court order.

(v) Refusing a peace officer's request to take a test described in subparagraph (i) will result in the suspension of his or her operator's or chauffeur's license and vehicle

group designation or operating privilege and in the addition of 6 points to his or her driver record.

(c) A sample or specimen of urine or breath shall be taken and collected in a reasonable manner. Only a licensed physician, or an individual operating under the delegation of a licensed physician . . . , qualified to withdraw blood and acting in a medical environment, may withdraw blood *at a peace officer's request* to determine the amount of alcohol or presence of a controlled substance or both in the person's blood, as provided in this subsection. Liability for a crime or civil damages predicated on the act of withdrawing or analyzing blood and related procedures does not attach to a licensed physician or individual operating under the delegation of a licensed physician who withdraws· or analyzes blood or assists in the withdrawal or analysis in accordance with this act unless the withdrawal or analysis is performed in a negligent manner. [MCL 257.625a(6); MSA 9.2325(1)(6) (emphasis added).]

### STATUTORY INTERPRETATION

This case involves statutory interpretation, which is a question of law subject to de novo review. *Oakland Co Bd of Rd Co Comm'rs v Michigan Property & Casualty Guaranty Ass'n*, 456 Mich 590, 610; 575 NW2d 751 (1998). The primary purpose of statutory interpretation is to ascertain and effectuate legislative intent. *Frankenmuth Mut Ins Co v Marlette Homes, Inc*, 456 Mich 511, 515; 573 NW2d 611 (1998).

When promulgating new laws, the Legislature is presumed to be familiar with rules of statutory construction and existing laws on the same subject. *Malcolm v East Detroit*, 437 Mich 132, 139; 468 NW2d 479 (1991); *People v Tracy*, 186 Mich App 171, 177; 463 NW2d 457 (1990). Consequently, silence by the Legislature following judicial construction of a statute sug-

gests consent to that construction. *Craig v Larson*, 432 Mich 346, 353; 439 NW2d 899 (1989).

As noted by the majority, we previously recognized that "[t]est results obtained pursuant to the exercise of statutory authority are not admissible unless obtained in conformity with the requirements of the [implied consent] statute." *McNitt v Citco Drilling Co*, 397 Mich 384, 393; 245 NW2d 18 (1976). In *McNitt*, we concluded that police officers obtained test results "under color of statutory authority" when (1) the tests were administered by medical personnel pursuant to the request of a police officer, and (2) the medical personnel were not informed the request was being made other than under the statute. *Id.*, 391-392, 394.

We refused to permit the use of test results obtained under color of statutory authority but in violation of the statute. Our rationale was that it would deprive drivers of their statutory choice of submitting to a blood alcohol test or losing their driver's license. Our ruling in *McNitt* preserved this statutory choice. *Id.*, 394.

In *People v Weaver*,[1] our Court of Appeals applied this analysis to a suspected intoxicated driver who had consented to chemical testing. As in the case before us, the police had failed to formally arrest or charge the defendant before obtaining his consent, and to comply with the implied consent statute. *Id.*, 56-58. Citing *McNitt*, the Court of Appeals held:

> [C]onsent to a blood alcohol test obtained from a conscious driver will be considered to have been obtained under color of the statutory authority absent express disclaimer to the driver of reliance on the statute and upon

---

[1] 74 Mich App 53; 253 NW2d 359 (1977).

statutory penalties, and advice that the statutory limits on
the use to which such test results may be put is inapplica-
ble. [*Id.*, 63.]

The Court of Appeals reasoned that the defendant
might have refused to consent to the test had he real-
ized that (1) the officer's request was not pursuant to
the statute, and that (2) his refusal would not have
resulted in revocation of his license. *Id.* Because the
statute may have exerted a coercive effect over the
defendant that aided in the acquisition of his blood
sample, the Court of Appeals concluded that a "test
made pursuant to authority other than the statute
must expressly disclaim reliance on the statute and
the statutory penalties for refusal." *Id.* Given that the
officer failed to expressly disclaim such reliance, the
Court concluded that the trial judge had erroneously
admitted evidence of the defendant's blood alcohol
test results. *Id.*

At the time *McNitt* and *Weaver* were decided, the
existing version of the implied consent statute
provided:

(1) A person who operates a vehicle upon the public
highways of this state is deemed to have given consent to
chemical tests of his blood, breath, urine or other bodily
substances for the purpose of determining the alcoholic
content of his blood if:

(a) He is arrested for driving a vehicle while under the
influence of intoxicating liquor, or while his ability to oper-
ate a vehicle has been impaired due to the consumption of
intoxicating liquor.

Like the present version of the implied consent stat-
ute, the former version provided for the arrest of the
driver. *Id.* Nevertheless, Michigan courts consistently
held that blood alcohol test results obtained under

color of statutory authority were inadmissible unless obtained in conformity with this statute. *McNitt, supra* at 393-394;[2] *People v McKinney*, 88 Mich App 715; 278 NW2d 728 (1979); *Weaver, supra* at 63.

However, with this decision, the majority repudiates this case law, finding that it contradicts a legislative intent that only persons who have been arrested fall within the purview of the statute.[3] *Ante* at 285.

Although citing "well established" rules of statutory construction, the majority ignores the fundamental rule that silence by the Legislature following judicial construction of a statute evidences consent to that

---

[2] I agree with *McNitt* and continue to

> appreciate that drunk drivers are a menace and that strict enforcement of drunk driving laws is in the public interest. The Legislature has, however, limited authority of police officers to request hospital personnel to withdraw blood or otherwise test for blood alcohol content without consent and has limited the use that may be made of blood alcohol test results obtained pursuant to exercise of that authority. [*Id.*, 394.]

[3] The majority also discusses *Gallagher v Secretary of State (On Rehearing)*, 59 Mich App 269; 229 NW2d 410 (1975). In *Gallagher*, the defendant was arrested for drunk driving that occurred outside the officer's presence. *Id.*, 272. Concluding that the arrest was invalid, the Court of Appeals held that the defendant's consent to take a chemical test was also invalid. It explained that "the sine qua non to energize the statutory mandate of the 'implied consent law' is a prior valid arrest." *Id.*, 276. However, unlike the immediate case, *Gallagher* involved an officer attempting to arrest the defendant before requesting his consent, rather than an officer acting under color of authority to obtain consent. In addition, *Gallagher* held:

> Since the arrest in this case was invalid so was the request to submit to the test or suffer the consequences of refusal. To this extent and to this extent alone do we uphold the injunction against further proceedings emanating from the alleged drunken driving by [the defendant]. [*Id.*]

Although the majority purports to endorse the "sine qua non" analysis from *Gallagher*, it finds itself obliged to overrule yet another case to reach its unfortunate holding. *Ante* at 292-293.

construction. *Craig, supra* at 353.[4] The Legislature has failed to object to this construction for over two decades. Through several amendments of the implied consent statute, it has left the language in question essentially unchanged.[5] Hence, the rationale of *McNitt* and *Weaver* are equally applicable today.

---

[4] See *Wikman v City of Novi*, 413 Mich 617, 638; 322 NW2d 103 (1982), *Wehmeier v W E Wood Co*, 377 Mich 176, 191; 139 NW2d 733 (1966), *In re Clayton Estate*, 343 Mich 101, 106-107; 72 NW2d 1 (1955), *Baks v Moroun*, 227 Mich App 472, 489; 576 NW2d 413 (1998), *Glancy v Roseville*, 216 Mich App 390, 394; 549 NW2d 78 (1996), aff'd 457 Mich 580; 577 NW2d 897 (1998), and *Generou v Kalamazoo Regional Psychiatric Hosp*, 192 Mich App 295, 304; 480 NW2d 638 (1991).

[5] The Legislature explicitly responded to the *McNitt* holding regarding the admissibility of blood alcohol test results in other prosecutions. By its response, it implicitly endorsed the holding that test results obtained under color of statutory authority are inadmissible, unless obtained in conformity with the implied consent statute. As Justice BOYLE explained in her dissent from *People v Keskimaki*, 446 Mich 240, 260-261; 521 NW2d 241 (1994):

In apparent response to *McNitt*, the Legislature added subsections 9 and 10. See 1982 PA 310. Subsection 9 specifically responds to the rationale in *McNitt* [that "a blood test taken in a hospital from an unconscious driver 'who did not consent' was not admissible as evidence," *Keskimaki* at 259], and squarely rejects it:

"[T]he results of a chemical [test] analysis of that sample shall be admissible in a criminal prosecution for a crime described in subsection (1) . . . regardless of whether the person had been offered or had refused a chemical test."

In addition, and even more persuasive evidence of the legislative intention to facilitate admissibility, the Legislature also explicitly responded to another rationale advanced in *McNitt*. In *McNitt*, the Court rejected the argument that the results were admissible under common law. It instead concluded that statutory authority was necessary to authorize the administration of blood tests because hospital authorities had probably taken the blood at the request of a police officer, rather than for diagnostic purposes. In subsection 9, the Legislature specifically addressed this distinction between law enforcement and diagnostic purposes by providing for admissibility of a sample withdrawn "for the purpose of medical treatment."

The Legislature instituted the amendments discussed by Justice BOYLE. However, significantly, it did not alter the determination that blood alcohol test results obtained under color of statutory authority and in violation of the implied consent statute are inadmissible. See *People v Sloan*,

I would affirm the Court of Appeals decision. Defendant's blood alcohol test results were obtained under color of statutory authority, but in violation of the implied consent statute and, therefore, should be inadmissible.[6]

### STATUTORY AUTHORITY

Section 625a(6)(c) also limits individuals permitted to draw blood for purposes of determining blood alcohol content to medical personnel, authorized pursuant to a police officer's request. *Id.* In *McNitt*,[7] we recognized that hospitals would be unlikely to permit medical personnel to draw blood for purposes of determining alcohol content without a request under then MCL 257.625a(2); MSA 9.2325(1)(2).[8] *Id.*, 390-391. To do so, absent such a request pursuant to the statute, would subject medical personnel to liability by

---

450 Mich 160, 183; 538 NW2d 380 (1995). "To change the law in that regard would have been an easy and convenient task for the Legislature."

[6] Given that the blood alcohol test results were properly suppressed pursuant to the statute, it was unnecessary for the trial court to make findings of fact regarding the constitutional validity of defendant's consent. See *ante* at 294. Therefore, I disagree with the majority's decision to remand this matter to the trial court for such a finding.

[7] *Supra* at 390-391.

[8] The statute provided:

"Samples and specimens of urine, breath and saliva shall be taken and collected in a reasonable manner; but only a duly licensed physician, or a licensed nurse or medical technician under the direction of a licensed physician and duly qualified to withdraw blood, acting in a medical environment, at the request of a police officer, can withdraw blood for the purpose of determining the alcoholic content therein under the provisions of this act. No liability for a crime or civil damages predicated on the act of withdrawing blood and related procedures attaches to a qualified person who withdraws blood or assists in the withdrawal in accordance with this act unless the withdrawal is performed in a negligent manner." [*Id.*, 391, n 9, quoting MCL 257.625a(2); MSA 9.2325(1)(2).]

denying them the resulting statutory protection from civil and criminal liability. *Id.*, 391, n 9. We explained:

> Absent disclaimer by the officer that he is acting under the statute, hospital personnel are protected in relying on such a request as authorization to proceed to administer a test under the statute without independent investigation and determination whether statutory requirements have been observed. [*Id.*]

In this case, the nurse who withdrew defendant's blood for purposes of determining his blood alcohol content was not informed (1) that the officer requested defendant's consent without statutory authority, or that (2) she could be acting without protection from civil or criminal liability. MCL 257.625a(6)(c); MSA 9.2325(1)(6)(c). The majority disregards the statutory limitation on medical personnel authorized to withdraw blood for purposes of determining blood alcohol content under § 625a(6)(c). It references no independent authority authorizing medical personnel to withdraw blood pursuant to the request of a police officer acting without statutory authority and in violation of the implied consent statute.

The majority additionally fails to address whether (1) the remaining provisions regarding chemical testing under § 625a are applicable under these circumstances, or (2) medical personnel acting under these circumstances are subject to liability. The opinion appears to create at least as many questions as it answers.

---

As noted by the majority, this provision is "substantively similar" to the present version of MCL 257.625a(6)(c); MSA 9.2325(1)(6)(c). *Ante* at 288, n 7.

CONCLUSION

Because the majority permits officers to obtain consent for blood alcohol testing under color of statutory authority and in violation of the implied consent statute, I respectfully dissent. I would affirm the judgment of the Court of Appeals and conclude that defendant's blood alcohol test results were inadmissible.

CAVANAGH, J., concurred with KELLY, J.