*In re* SUBPOENAS TO NEWS MEDIA PETITIONERS

Docket No. 220790. Submitted February 2, 2000, at Detroit. Decided
March 28, 2000, at 9:05 A.M. Leave to appeal sought.

The Ingham County Prosecutor, in a criminal case in the 54-B District
Court against Anthony D. Pastor relating to his involvement in a
riot, served Federated Publications, Inc., and several other news
media discovery subpoenas pursuant to MCR 2.506 and investiga-
tive subpoenas, provisionally issued by the Ingham Circuit Court
pursuant to MCL 767A.1 *et seq.*; MSA 28.1023A(1) *et seq.*, requesting
the media to provide to the prosecutor unpublished photographs
and videotapes taken of the riot by the media. The media moved in
the district court to quash the court rule subpoenas, arguing that
MCR 2.506 does not allow discovery subpoenas in criminal matters.
The motion was denied. In the circuit court, the media appealed
the district court's denial of the motion to quash the court rule sub-
poenas and also moved to quash the investigative subpoenas. The
matters were consolidated, and the circuit court affirmed the dis-
trict court's denial of the motion to quash the court rule subpoenas,
but quashed the investigative subpoenas. The Court of Appeals
denied the media's application for leave to appeal. The Supreme
Court, in lieu of granting leave to appeal, vacated the orders of the
circuit court and the district court, ruled that the district court
erred in allowing use of a subpoena under MCR 2.506 as a discov-
ery procedure in a criminal case, and remanded the matter to the
district court for consideration of the prosecutor's request for
investigative subpoenas under MCL 767A.1 *et seq.*; MSA
28.1023A(1) *et seq.* 459 Mich 1241 (1999). On remand, the district
court denied the media's motion to quash the investigative subpoe-
nas. The circuit court, Lawrence M. Glazer, J., reversed the deci-
sion of the district court and quashed the investigative subpoenas,
ruling that the media could not be compelled under the investiga-
tive subpoena statute to provide the requested photographs and
videotapes. The prosecutor appealed by leave granted.

The Court of Appeals *held*:

A reporter or other person who is involved in the gathering or
preparation of news for broadcast or publication is subject to an
inquiry under MCL 767A.1 *et seq.*; MSA 28.1023A(1) *et seq.* under
two circumstances only: to obtain information that has been dis-

seminated to the public by media broadcast or print publication, or if the reporter or other person is the subject of the inquiry. A reporter or other person who is involved in the gathering or preparation of news for broadcast or publication, if subject to an investigative subpoena, is not required to disclose the identity of an informant, any unpublished information obtained from an informant, or any unpublished matter or documentation relating to a communication with an informant.

In this case, the circuit court did not err in concluding that investigative subpoenas on the media were inappropriate inasmuch as the photographs and videotapes have not been disseminated to the .public, and the media were not the subjects of the prosecutor's inquiry.

Affirmed.

PROSECUTING ATTORNEYS — INVESTIGATIVE SUBPOENAS — NEWS MEDIA.

A reporter or other person who is involved in the gathering or preparation of news for broadcast or publication is subject to a prosecutor's inquiry by use of an investigative subpoena only if the prosecutor seeks to obtain previously published information or if the reporter or other person is the subject of the prosecutor's investigation (MCL 767A.6[6]; MSA 28.1023A[6][6]).

*Jennifer M. Granholm*, Attorney General, *Thomas L. Casey*, Solicitor General, *Stuart J. Dunnings, III*, Prosecuting Attorney, and *Samuel R. Smith*, Chief Appellate Attorney, for the people.

*Foster, Swift, Collins & Smith, P.C.* (by *Charles E. Barbieri*), for Federated Publications, Inc.

*Honigman, Miller, Schwartz & Cohn* (by *Herschel P. Fink* and *Cameron J. Evans*), for The Detroit Free Press, Inc., WJBK-TV, WKBD-TV, and WJRT-TV.

*Kasiborski, Ronayne & Flaska* (by *John J. Ronayne, III*), for WILX-TV, WLNS-TV, and State News, Inc.

*Butzel Long* (by *James E. Stewart*) for WXYZ-TV and *Baker & Hostetler LLP* (by *Bruce W. Sanford*), of Counsel to Channel 7 of Detroit, Inc.

*Warner, Norcross & Judd* (by *Devin S. Schindler*), for WZZM-TV.

*Varnum, Riddering, Schmidt & Howlett, LLP* (by *John W. Allen*), for WWMT-TV3.

Amicus Curiae:

*Law Offices of Dawn Phillips-Hertz* (by *Dawn Phillips-Hertz* and *Lisa Rycus Mikalonis*), for Michigan Press Association.

Before: O'CONNELL, P.J., and MURPHY and JANSEN, JJ.

MURPHY, J. In April 1999, a number of investigative subpoenas were issued to appellees/cross-appellants, several news organizations (hereinafter the media), requiring the media to produce several unpublished photographs and videotapes taken by the media's employees during what has been referred to as the East Lansing riots in March 1999. After a remand from our Supreme Court, the district court held that the investigative subpoenas were proper under MCL 767A.1 *et seq.*; MSA 28.1023A(1) *et seq.* The circuit court reversed and quashed the subpoenas, holding that the statute exempts news gatherers while they are pursuing their profession. The prosecutor now appeals by leave granted from the circuit court order reversing the decision of the district court and quashing the prosecutor's investigative subpoenas. We affirm.

The facts are essentially undisputed. On March 27 and 28, 1999, the media took several photographs and videotapes during a disturbance in East Lansing following the elimination of the Michigan State University Spartans from the NCAA basketball tournament. In

April 1999, the Ingham County Prosecutor served the media with broad discovery subpoenas pursuant to MCR 2.506 in the criminal case of *People v Pastor*, involving one of the alleged participants in the March disturbance. These so-called "court rule" subpoenas requested the media to provide several unpublished photographs and videotapes that were taken by the media while covering the riots. The media moved to quash the court rule subpoenas, arguing that MCR 2.506 does not allow discovery subpoenas in criminal matters and that they had a qualified privilege under the First Amendment. The district court denied this motion on April 9 and 13, 1999.

In the meantime, the prosecutor sought to obtain the same unpublished photographs and videotapes through the use of investigative subpoenas.[1] On April 14, 1999, the media were served with investigative subpoenas that were provisionally issued by the Ingham Circuit Court pursuant to MCL 767A.1 *et seq.*; MSA 28.1023A(1) *et seq.* The media appealed the district court's ruling refusing to quash the court rule subpoenas. The media also moved to quash the investigative subpoenas provisionally issued by the circuit court. The circuit court ordered the matters consolidated for hearing. On April 22, 1999, the circuit court affirmed the district court's denial of the media's motion to quash the court rule subpoenas. The court also ruled that the investigative subpoenas provisionally issued on April 14, 1999, were contrary to the statute; those subpoenas were therefore quashed.

---

[1] The media stated during oral argument that all news media provided the prosecutor with copies of tapes used in broadcasts. The prosecutor does not dispute this fact.

On April 26, 1999, this Court denied the media's application for leave to appeal. However, our Supreme Court, in lieu of granting leave to appeal, vacated the circuit court's order of April 22, 1999, and the district court's orders of April 9 and 13, 1999, and ruled that the "district court erred in allowing use of a subpoena under MCR 2.506 as a discovery procedure in a criminal case." *In re Subpoenas to News Media Petitioners*, 459 Mich 1241 (1999). The Supreme Court remanded the case to the district court "for consideration of the prosecuting attorney's request for investigative subpoenas under MCL 767A.1 *et seq.*; MSA 28.1023A(1) *et seq.*"

On May 19, 1999, the district court heard oral arguments on the prosecutor's request for investigative subpoenas under MCL 767A.1 *et seq.*; MSA 28.1023A(1) *et seq.* The district court denied the media's motion to quash those subpoenas, holding that there is no qualified privilege for noninformant material and that the statute does not protect material regarding a felony obtained directly by a reporter while reporting. The media appealed, and the circuit court held a hearing on this matter on June 23, 1999. The circuit court reversed the decision of the district court and quashed the investigative subpoenas, reasoning that "the statute unambiguously exempts members of the news gathering profession while they are pursuing their profession, with one or two exceptions which are not here pertinent." However, the circuit court affirmed the district court's order "insofar as it denied [the media's] Motion to Quash on the basis of a First Amendment privilege." This Court subsequently granted the prosecutor's application for leave to appeal.

We are faced with the question whether the circuit court erred in quashing the investigative subpoenas pursuant to MCL 767A.6(6); MSA 28.1023A(6)(6). The parties proffer opposing interpretations of subsection 6, and, that being the issue central to this appeal, we must decide which, if either, of these interpretations is correct.

Statutory interpretation and application is a question of law that is reviewed de novo by this Court. *People v Webb*, 458 Mich 265, 274; 580 NW2d 884 (1998). The primary purpose of statutory interpretation is to ascertain and effectuate the intent of the Legislature. *Id.* at 273-274; *Frankenmuth Mut Ins Co v Marlette Homes, Inc*, 456 Mich 511, 515; 573 NW2d 611 (1998). When determining the intent of the Legislature, this Court must first look to the specific language of the statute. *People v Borchard-Ruhland*, 460 Mich 278, 284; 597 NW2d 1 (1999). If the plain and ordinary meaning of the statute's language is clear, judicial construction is inappropriate. *Id.* However, if reasonable minds can differ regarding the statute's meaning, judicial construction is appropriate. *Adrian School Dist v Michigan Public School Employees' Retirement System*, 458 Mich 326, 332; 582 NW2d 767 (1998). With these principles in mind, we turn to the statutory chapter providing for investigative subpoenas, MCL 767A.1 *et seq.*; MSA 28.1023A.1 *et seq.*, and we look at the plain language of the subsection excepting the media, MCL 767A.6(6); MSA 28.1023A(6)(6).

MCL 767A.1 *et seq.*; MSA 28.1023A.1 *et seq.* governs the use of investigative subpoenas by prosecuting attorneys. Under the statutes, a prosecuting attorney may petition the district court or the circuit court for

authorization to issue subpoenas to investigate the commission of a felony. MCL · 767A.2(1); MSA 28.1023A(2)(1). The court may then authorize the prosecutor to issue an investigative subpoena if the judge determines that there is reasonable cause to believe a felony has been committed and that there is reasonable cause to believe that the person who is the subject of the investigative subpoena may have knowledge concerning the commission of a felony or the items sought are relevant to investigate the commission of a felony. MCL 767A.3(1); MSA 28.1023A(3)(1). Once served, the subject of an investigative subpoena must appear before the prosecuting attorney and answer questions concerning the felony being investigated or present any physical evidence that the subject is required to produce. MCL 767A.5(1); MSA 28.1023A(5)(1). MCL 767A.6; MSA 28.1023A(6) sets forth the procedure to be used when a person refuses to produce any evidence sought by investigative subpoena and identifies certain circumstances under which disclosure of information cannot be compelled. Subsection 6, the provision at issue in this case, provides:

> A reporter or other person who is involved in the gathering or preparation of news for broadcast or publication is not required to disclose the identity of an informant, any unpublished information obtained from an informant, or any unpublished matter or documentation, in whatever manner recorded, relating to a communication with an informant, in any inquiry conducted under this chapter. A reporter or other person who is involved in the gathering or preparation of news for broadcast or publication is subject to an inquiry under this chapter only under the following circumstances:

(a) To obtain information that has been disseminated to the public by media broadcast or print publication.

(b) If the reporter or other person is the subject of the inquiry. [MCL 767A.6(6); MSA 28.1023A(6)(6).]

The circuit court held that issuance of the statutorily created investigative subpoenas sought by the prosecutor in this case was inappropriate. The court found that the second sentence of subsection 6 "unambiguously exempts members of the news gathering profession while they are pursuing their profession, with one or two exceptions . . . not here pertinent." The court additionally stated that because it found the statute "unambiguously though poorly drafted," it saw no reason to delve into the legislative history to further its analysis.

The prosecutor contends that the circuit court erred in its conclusion regarding the ambiguity of the statute. The prosecutor argues that judicial construction of the statute is appropriate, with such construction to encompass a review of the statute's legislative history. The prosecutor asserts that the statute should be interpreted to allow this issuance of investigative subpoenas to the media because the events recorded are of a public nature and there are no informants to be protected. We disagree.

We agree with the trial court's finding in regard to the near absolute media exemption clearly provided by the second sentence of this subsection. As the media argue, the second sentence of subsection 6 provides a threshold test that must be satisfied before a reporter will be compelled to respond to an investigative subpoena. Pursuant to this test, a reporter, pursuing the reporter's profession, is subject to an inquiry by use of investigative subpoena *only* if the

prosecutor seeks to obtain previously published information or if the reporter is the subject of the prosecutor's investigation. The plain language of this sentence can be interpreted in no other fashion. *Borchard-Ruhland, supra* at 284.

Although conceding that this sentence, with its exceptions, is unambiguous, the prosecutor contends that it cannot be viewed in a vacuum, and instead must be interpreted in light of the first sentence of subsection 6, which references information concerning informants. The first sentence, on its face, purports to provide an absolute privilege against disclosure of informant-related material in *any* inquiry conducted by use of investigative subpoenas. The prosecutor submits that the second sentence must be viewed as a modification of the first, essentially asserting that the two conditions allowing inquiry are exceptions to the informant information privilege. Contrary to the prosecutor's assertions, however, we again agree with the reasoning of the media that the two sentences of subsection 6 in fact concern distinctly separate concepts.

As the media argue, the absolute privilege of the first sentence, preventing compelled disclosure of informant-related information, does not even come into play unless the threshold of the second sentence is passed and an inquiry is authorized through satisfaction of one of the two exceptions. In other words, when considering a prosecutor's request to issue an investigative subpoena to a reporter, a court should first apply the second sentence and determine whether either of the two exceptions apply. If not, the subpoena should not issue. However, if an exception is satisfied, the subpoena may issue. If a later chal-

lenge is raised regarding the nature of the information sought by the prosecutor, the court should then apply the first sentence and determine whether the materials desired relate to information about, or received from, an informant. If not, the court may order compliance with the subpoena. However, if the information sought is related to a reporter's contact with an informant, the court should give effect to the absolute privilege against disclosure of such subject matter.

The prosecutor argues that the legislators would not put a partial exemption for reporters in the first sentence and a broader exemption in the second because such structure is illogical. As indicated by the above discussion, however, while perhaps unusual in sentence order, the provision is hardly illogical. The prosecutor's argument of grammatical inconsistency is not supported by any legal authority suggesting that the structure of this provision is improper. Although subsection 6 may arguably have been clearer had the sentence order been reversed, given our indication that the second sentence must be considered first and the first second, that the plain language of the provision is nevertheless wholly understandable leads us to the conclusion that the statute is not ambiguous. Accordingly, judicial construction, requested by the prosecutor, is neither necessary nor appropriate. *Id.*

Applying the statute to this case, it is undisputed that the photographs and videotapes sought by the prosecutor were obtained by the media as they gathered and prepared news in performance of their profession, that the items have not been previously disseminated to the public, and that the media are not the subject of the investigation of the March distur-

bance in East Lansing. Therefore, the circuit court did not err in quashing the investigative subpoenas issued to the media under MCL 767A.6(6); MSA 28.1023A(6)(6) because the media are exempt from the statute.

To the extent the prosecutor contends that it is contrary to policy, and the intent of the Legislature, to interpret and apply this statute to extend the media privilege to information gathered outside the informant context, we briefly comment on our disagreement.

Concerns broader than the mere revelation of the identity of an informant are implicated by the potentially sweeping power to subpoena media information argued for by the prosecutor. The media are special entities in our society, sometimes afforded certain leeway where others might be restricted under law. That in essence the Legislature has seen fit to protect the media under this statute, to, in the prosecutor's words, "create a special class of persons not subject to an Investigative Subpoena," is neither inimical to the overall purpose of the chapter nor contrary to public policy.

That the media enjoy a special position in our society is most evident on consideration of our constitutions, which provide for the freedom of the press. US Const, Am I; Const 1963, art 1, § 5. To interpret the statute at issue in the manner advocated by the prosecutor would unquestionably infringe on the autonomy of the press and could have a chilling effect on the constitutional protections afforded the media. Such a concern has similarly been indicated in other jurisdictions, where the qualified media privilege, traditionally protecting confidential sources, has enjoyed an

identical expansion when analyzed in the context of compelled disclosure of information pursuant to subpoena. In *Gonzales v Nat'l Broadcasting Co, Inc*, 194 F3d 29, 35 (CA 2, 1999), the Second Circuit Court of Appeals stated:

> If the parties to any lawsuit were free to subpoena the press at will, it would likely become standard operating procedure for those litigating against an entity that had been the subject of press attention to sift through the press files in search of information supporting their claims. The resulting wholesale exposure of press files to litigant scrutiny would burden the press with heavy costs of subpoena compliance, and could otherwise impair its ability to perform its duties—particularly if potential sources were deterred from speaking to the press, or insisted on remaining anonymous, because of the likelihood that they would be sucked into litigation. . . . And permitting litigants unrestricted, court-enforced access to journalistic resources would risk the symbolic harm of making journalists appear to be an investigative arm of the judicial system, the government, or private parties.

As noted by the Second Circuit Court of Appeals, these concerns have been recognized elsewhere. *Id.* at 35, n 5; see also *O'Neill v Oakgrove Constr, Inc*, 71 NY2d 521, 526-527; 528 NY Supp 2d 1; 523 NE2d 277 (1988). We agree with the concerns voiced by these other courts and today decline to interpret the statutory provision at issue in a manner that could allow a prosecutor's office to, in effect, conduct a fishing expedition utilizing the media as its indentured servants.

Our resolution of this first issue being dispositive of this appeal, we decline to reach the media's cross appeal challenging the circuit court's ruling denying

that portion of the motion to quash that was premised on an assertion of First Amendment privilege.

Affirmed.